# THE SUMWALT ICE AND COAL COMPANY *vs.* THE KNICKERBOCKER ICE COMPANY.

*Interference With Contract Between Third Parties—Liability of Party Inducing a Person to Commit Breach of Contract to That Person—Evidence—Instructions.*

The person who unlawfully or maliciously causes one of the parties to a contract to break it is liable in damages to the person who is thus made to break his contract for the loss he suffers in consequence of such unlawful act.

In an action to recover damages suffered by the party who was compelled by the threats of the defendant to break his contract with a third person, it is no defense that he was also a wrongdoer by breaking his contract, and that by the suit he is seeking to take advantage of his own wrong.

Plaintiff, a dealer in ice, made a contract with the defendant company, an ice manufacturer, for the purchase of ice for two years, at a varying scale of prices. Those for the months from June to October, 1908, were $2.25 per ton. Each party agreed not to sell to, or interfere with, the cus-

tomers of the other.   In June, 1908, plaintiff made a contract with a dairy company to sell to it ice at $5.00 per ton. The defendant company then notified the plaintiff not to sell to the dairy company, which was not a customer of the defendant, and threatened that if plaintiff did so defendant would not supply in the future.   There was at that time a scarcity of ice, so that plaintiff could not obtain a supply except from the defendant.   In consequence of this notice and threat, the plaintiff was obliged to break his contract with the dairy company, and the defendant sold ice directly to the dairy at $5.00 per ton, and the plaintiff lost the profit he would have made under his contract with the dairy company.   In an action to recover damages for the loss so occasioned, *held,* that the notice and threat of the defendant company, which obliged the plaintiff to refrain from carrying out his contract with the dairy, was an unlawful act causing the damage to the plaintiff for which he is entitled to recover.

*Held,* further, that the fact that the plaintiff could have bought ice from other persons does not defeat his right to maintain the action; nor is the plaintiff a joint tort feasor with the defendant.

In such action, evidence is admissible to prove the contract between the plaintiff and the dairy company.

The testimony of a witness as to what a certain person said to him is hearsay.

Evidence of the declarations of a party made more than six months after the commission of the wrong complained of are not part of the *res gestæ.*

A prayer instructing the jury that "under the pleadings and evidence in the case" the plaintiff is not entitled to recover does not raise the question of the legal sufficiency of the evidence, but relates to the sufficiency of the declaration.

*Decided January 11th, 1911.*

Appeal from the Baltimore City Court (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Wm. S. Bryan, Jr.,* and *E. Allan Sauerwein, Jr.,* (with whom was *Victor I. Cook* on the brief), for the appellant.

This Court has repeatedly held that one who wrongfully. interfered with the contractual relations existing between two parties, by procuring the breach of the contract by one of the parties to the injury of the other is responsible in damages to the party injured. *Lucke's case,* 77 Md. 396; *Gore* v. *Condon,* 87 Md. 368. In *Gardiner Dairy Co.* v. *Knickerbocker Ice Co.,* 107 Md. 556, the Court, upon the same state of facts, held the appellee liable to the Gardiner Dairy Co. for the loss and damage it sustained.

It, therefore, stands to reason that the Dairy Company could have recovered against this appellant, as a co-tort feasor with the appellee, and if the appellant was a free-will agent in so becoming a co-tort feasor, it could, of course, have no contribution from its partner in the wrong.

On the other hand, if the appellant did not act voluntarily in the transaction, but as the result of threats and intimidations made by the appellee, amounting to duress, then the appellee cannot be heard to say that the appellant is a co-tort feasor with it; for to do so would be taking advantage of its own wrong.

That the appellant's conduct was occasioned by duress is too apparent to admit of any doubt. The record establishes. without contradiction, that the carrying into effect of the appellee's threat would have worked a complete annihilation of a business which had taken years to build. In *Moore* v. *Putts,* 110 Md. 490, this Court said that the exaction of a contract under penalty of refusal to deliver certain insurance policies amounts to duress.

To better emphasize the distinction we draw, let us illustrate. If A and B assault C, C may recover against both A

and B, and if he have satisfaction out of B alone, B cannot require A to contribute; but if the assault was committed by reason of A holding a pistol to the head of B and threatening to shoot him if he did not then and there assault C, C could recover against both A and B; but, if he had satisfaction of B alone, B would have the right to recover from A all that he had paid C. For as between A and B, it cannot be said that B was guilty of an assault upon C any more than it could be said that any other individual is guilty of an act occasioned by threat and intimidation amounting to duress.

But the right to recover can be sustained upon yet another ground, for if we take the same illustration B can recover from A for the wrong which A has done to B in threatening and intimidating him, for certainly such conduct on his part is a wrong against B, and there can be no wrong without a remedy. In the case at bar, this Court has already held, as we have seen, that the action of the appellee did constitute a wrong against the appellant; and the result of that act in damage to the appellant is wholly separate and distinct from its result in damage to the Dairy Co., and therefore a satisfaction of the latter is not a satisfaction of the former.

The contract, for causing the breach of which this action was brought, is undoubtedly relevant and admissible.

In granting the motion of the defendant to strike out the testimony of Mr. Gardiner about what he said to the Sumwalt Company, which action forms the ground for the first exception, the Court said: "It is not strictly admissible; it is a conversation that he had with the plaintiff company out of the presence of the defendant company." This we contend was error. It is true that no self-serving declaration is admissible unless it is made in the presence of the other party, under circumstances which call for the some action or statement on his part. *Nusbaum* v. *Thompson,* 11 Md. 557; *Leffler* v. *Allard,* 18 Md. 545, 552; *Friend* v. *Hammill,* 34 Md. 298.

But we are not here dealing with declarations, self-serving or otherwise. This is a conversation between two parties, one of whom was then on the stand and the other was later placed thereon, and the offer was made to prove what took place at the time. We submit, therefore, that the reason given by the Court was erroneous.

*J. Leiper Winslow* and *Edward C. Carrington, Jr.,* for the appellee.

The Sumwalt Ice and Coal Company, in this case, seeks to hold the Knickerbocker Ice Company liable in tort for causing it to commit the wrong against the Gardiner Company. Its effort is to place a premium on its own wrongdoing. The evidence shows that the Sumwalt Ice and Coal Company made no effort to get ice with which to supply the Gardiner Dairy Company, but that when it was informed that it could obtain no further ice from the Knickerbocker Ice Company that it immediately acquiesced in the demand of the Knickerbocker Ice Company that it desist from further supplying ice to the Gardiner Dairy Company, and continued to purchase ice from the Knickerbocker Ice Company down to the expiration of the contract, April 1st, 1908, a year and a half after the Knickerbocker Ice Company required the Sumwalt Ice and Coal Company to stop selling ice to the Gardiner Dairy Company.

The Gardiner Dairy Company was left to shift for itself and find a means of supplying its requirements as best it could. This was an unlawful act on the part of the Sumwalt Ice and Coal Company, the appellant. For procuring the commission of this wrongful act, the appellee, the Knickerbocker Ice Company, was held by this Court answerable in damages to the Gardiner Dairy Company. 107 Md. 564.

None of the numerous cases reviewed by this Court in the Gardiner Dairy Company case throw out any hint or suggestion that the party that is induced to break the contract

himself has a remedy against the party who induces him to commit the wrong.

If a wrong were done, and this Court has decided that a wrong was done in the Gardiner Dairy Company matter, then the wrong done it was a breach on the part of the Sumwalt Ice and Coal Company of its contract to deliver it ice during the summer of 1906.

The Sumwalt Ice and Coal Company is *in pari delicto.* *Riggs* v. *Palmer,* 115 N. Y. 506; compare *Owens* v. *Owens,* 100 N. C. 240.

In all matters involving interference with contracts, or other relations, the remedy flows to the third party injuriously affected by the unjustifiable interference.

Taking *Lumley* v. *Gye,,* 2 El. and B. 216, as an illustration: We have never heard it seriously contended that the opera singer herself had a cause of action against him who induced her to commit the wrong of breaking her first contract. If unlawful means were resorted to to induce her to break such contract, then she would have had a remedy— not for breaking her contract, but as a remedy for the unlawful means adopted by him who induced her to break the contract.

There was a tame acquiescence on the part of the Sumwalt Ice and Coal Company to the demand of the Knickerbocker Ice Company, that it drop the Gardiner Dairy Company as a customer and cease furnishing it ice. This acquiescence was born of the very large commercial advantages to the Sumwalt Ice and Coal Company by virtue of the contract of March 19, 1906, under which contract the Sumwalt Ice and Coal Company continued to purchase ice of the Knickerbocker Ice Company down to April 1st, 1908. In other words, it was induced and persuaded that it was better to keep the good will of the Knickerbocker Ice Company rather than enter into any contention as to whose customer the Gardiner Dairy was: and the appellant therefore acquiesced in and sanctioned the claim of the Knickerbocker Ice

Company—a claim made in entire good faith—that the Gardiner Dairy Company was its customer.

A suit by the Sumwalt Ice and Coal Company against this appellee for alleged breach of the contract of March 19, 1906, has been heretofore before this Court—*Sumwalt Ice and Coal Company* v. *Knickerbocker Ice Company,* 112 Md. 437.

As interference with contract was only intended to protect the third party injured, it would be enabling the Sumwalt Ice and Coal Company to take advantage of its own wrong if it were permitted to recover in this case. *Am. & Eng. Enc.,* 1109, Vol. 16, 2nd Ed.

There was no sufficient evidence adduced entitling the case to be submitted to the jury. It must have been made perfectly plain to this Court that this suit and the suit reported in 112 Md.—*Sumwalt Ice and Coal Company* v. *Knickerbocker Ice Company*—as well as the case reported in 107 Md.—*Knickerbocker Ice Company* v. *Gardiner Dairy Company*—was the outgrowth of what the Knickerbocker Ice Company believed was the proper assertion of its rights under the contract of March 19th, 1906; that the whole transaction was a fight or contention between the Knickerbocker Ice Company and the Sumwalt Ice and Coal Company as to the propriety of retaining the Gardiner Dairy Company as a customer. It was an honest dispute as to who was entitled to retain the trade of the Gardiner Dairy Company. If the Sumwalt Ice and Coal Company were entitled to retain the trade of the Gardiner Dairy Company and continue serving it ice under its arrangement of June 29, 1906, its rights were protected by its written contract with the Knickerbocker Ice Company upon which it could readily have forced the Knickerbocker Company to have supplied it with the ice it was entitled to and enjoined it from interfering with its customers; and it has been prompt and vigorous in asserting those rights by suing for the recovery for the alleged breach of the contract. It is hardly necessary

for it to resort to an action on the case to afford it a remedy for taking away its customer as its rights are amply protected under the contract of March 19, 1906.

The evidence shows conclusively that the Sumwalt Ice and Coal Company acquiesced in the contention of the Knickerbocker Ice Company, that the Knickerbocker Ice Company was entitled to the trade of the Gardiner Dairy Company. If such contention of the Knickerbocker Ice Company were not well founded, the Sumwalt Ice and Coal Company condoned the conduct of the Knickerbocker Ice Company and was studiously careful in taking all the benefits which flowed from its contract of March 19, 1906, and which had eighteen months to run after the Sumwalt Company was deprived of the trade of the Dairy Company.

BURKE, J., delivered the opinion of the Court.

This is the plaintiff's appeal from a judgment in favor of the defendant entered in the Baltimore City Court. The plaintiff is a foreign corporation engaged in the wholesale and retail ice business in Maryland, and the defendant corporation is a manufacturer of ice, and engaged in the wholesale distribution of both natural and artificial ice in Baltimore City and elsewhere. The plaintiff is not a manufacturer of ice; but depends upon its purchase from others to supply its customers.

On the 19th day of March, 1906, the plaintiff entered into an agreement with the defendant whereby it agreed to purchase from it and the defendant agreed to sell to the plaintiff such quantities of ice as the plaintiff would require in its business from the 1st day of April, 1906, to the 1st day of April, 1908, at prices for each month specified in the contract. The platform prices for the month of June, July, August and September, 1906, were $2.25 per ton. The contract contains three other provisions, or conditions which must be considered on this appeal. First, the plaintiff agreed that it would not directly or indirectly either in the pur-

chase or sale of ice deal with the American Ice Company, the Independent Ice Company, the Baltimore Heating and Refrigerating Company, the Crystal Ice Company, the Buena Vista Ice Company, or the Vacuum Ice Company, or any other persons, firm or corporation similarily engaged, or hereafter to be formed during the term of this contract, for the purpose of manufacturing ice, in competition with the defendant, or in handling, in such wise, the natural product of ice; but this clause, it was agreed, was not to be so construed as to prevent the plaintiff from extending its business of serving ice as then conducted by it; secondly, that the plaintiff would not directly or indirectly *sell to or interfere with the customers or trade of the defendant;* that the defendant would not either of itself or through any person or persons natural or artificial and under its control, sell to the customers of the plaintiff, *or do anything to interfere with, injure, or divert in anywise the business of the plaintiff.*

On June 29, 1906, an agreement was entered into between the plaintiff and the Gardiner Dairy Company, a corporation, whereby the plaintiff agreed to sell and deliver to that company, and it thereby agreed to take from the plaintiff such ice as it should require in its business, at the price of $5 per ton delivered in amounts not to exceed twenty tons of ice per day from the date of the agreement and until the Gardiner Company should complete its own ice manufacturing plant then in course of construction.

The declaration in this case sets out the facts which we have stated and which are established by the evidence. It then alleges "that the defendant in utter disregard of the rights of the plaintiff and of its contractual obligations to the plaintiff did wrongfully, improperly, and maliciously notify the said plaintiff to desist from selling ice to the said Gardiner Dairy Company of Baltimore City, and to disregard and break the said agreement so entered into between the said plaintiff and the said Gardiner Dairy Company of Baltimore City, and did wrongfully, improperly and maliciously

threaten the said plaintiff that if it did not so desist and so ignore and violate its said agreement that it, the said defendant, would refuse to sell and deliver to said plaintiff any more ice under its said agreement with the said plaintiff. And the plaintiff further says that at the time of the issuance of this threat by the said defendant body corporate there was a great scarcity of ice not only in the City of Baltimore, but throughout the Middle Atlantic States generally, and the plaintiff being apprehensive that if it did not comply with the wishes of the said defendant body corporate and if the said defendant should carry out its threat, the entire business of the plaintiff would be thereby ruined, did notify the said Gardiner Dairy Company that it would break its said agreement and of the reason therefor, and thereupon the said Gardiner Dairy Company being unable to secure ice elsewhere did enter into an agreement with the defendant body corporate to purchase of it five hundred tons of ice at the price of five dollars ($5.00) per ton at the platform of the defendant body corporate, under which agreement the said Gardiner Dairy Company did actually purchase four hundred and eighty-seven and a fraction tons." The declaration further alleges "that the action of the said defendant in causing the plaintiff to break the said contract with the said Gardiner Dairy Company of Baltimore City was with the desire and intent on the part of the said defendant to injure the said plaintiff and to obtain a benefit for itself by selling four hundred and eighty-seven and a fraction tons of ice at five dollars ($5.00) per ton at its platform to the Gardiner Dairy Company of Baltimore City rather than at the price of two dollars and fifty cents per ton, which was the prevailing price at that time to the plaintiff, by which unlawful and malicious action on the part of said defendant the plaintiff has been greatly damaged."

During the course of the trial in the lower Court nine exceptions to rulings upon questions of evidence were reserved by the plaintiff, and at the conclusion of its case the Court

instructed the jury that "under the pleadings and upon the evidence" in the case the plaintiff was not entitled to recover, and that the verdict of the jury must be for the defendant. This ruling constitutes the tenth exception. It raises no question as to the legal sufficiency of the evidence introduced in support of the plaintiff's case. As to that the prayer is too general and indefinite, and in the form in which it was granted must be treated only as an attack upon the sufficiency of the declaration. Under a prayer referring to the pleadings the legal sufficiency of the declaration may be raised and determined.

*Leopard* v. *Chesapeake & Ohio Canal,* 1 Gill, 222; *Baltimore City Passenger Railroad Company* v. *Wilkinson,* 30 Md. 229; *Ward* v. *Schlosser,* 111 Md. 528.

We have no doubt that the declaration sets out a legal cause of action. The facts alleged disclose an actionable tort committed by the defendant upon the rights of the plaintiff resulting directly in substantial damage to it. In *Acker, Merrall & Condit Co.* v. *Magraw,* 106 Md. 551, we said: "A person commits a tort, and renders himself liable to an action for damages, who commits some act not authorized by law, or who omits to do something which he ought to do by law, and by such an act or omission either infringes some absolute right, to the uninterrupted enjoyment of which another is entitled, or cause to such other some substantial loss of money, health or material comfort, beyond that suffered by the rest of the public. *Moak's Underhill on Torts,* 4. The two essential elements, therefore, necessary to sustain the action are: (1) A wrongful act or omission of duty by the defendant; and (2) damage or loss to the plaintiff in consequence of such act or omission."

The plaintiff had a right to carry on its business under the contract with the Gardiner Dairy Company, and it was the legal duty of the defendant to refrain from the use of intimidation, force, coercion, threats, or any other illegal means with a view of preventing it from doing so, and if with the

purpose and by the means stated in the declaration it prevented the plaintiff from fulfilling its contract with the Dairy Company and thereby the plaintiff was damaged as alleged, the defendant's liability for such damage or loss cannot be seriously doubted.

The gist of the action is the wrongful and unlawful interference with the business relations of the plaintiff by the means and for the object alleged.

It would serve no useful purpose to review the great number of English and American cases which deal with the subject of the unlawful interference with contract or trade relations.

In *Knickerbocker Ice Company* v. *Gardiner Dairy Company*, 107 Md. 556, the subject of interference with contract relations is fully discussed, and many cases bearing upon the question, and also upon the subject of the unlawful interference with the plaintiff's trade, or business, or employment are refered to and considered. As to the latter subject the authorities both in England and America have established the proposition that any unlawful or wrongful intereference by A with the liberty of B to pursue his lawful trade, business, or calling whereby B suffers damage is actionable, and he can maintain an action against A for such interference, and this is so whether A acts alone, or in concert or combination with many.

Under such circumstances each is a tort feasor. This is the central idea or underlying principle of all cases. In many of the cases the element of combination or conspiracy is found. If the act be lawful the combination or conspiracy to commit it does not make the act unlawful; if it be unlawful the combination to commit it may render its commission easier and may aggravate the injury; but it does not change the character of the act. The fact of combination is treated by the Courts as of great evidentiary value in deciding the question of coercion or duress. In *Giblan* v. *National Laborers' Union*, 2 K. B. 600 (1903), it appeared that two

officers of the Union had caused the plaintiff to be discharged
from one. place of employment after another because of his
refusal to pay a certain debt to a Union from which he had
been expelled. This the defendants were able to do by means
of threats and coercion exercised upon the employer. It was
held that the plaintiff might recover, ROMER, L. J., saying:
"But I should be sorry to leave this case without observing
that, in my opinion, it was not essential, in order for the
plaintiff to succeed, that he should establish a combination of
two or more persons to do the acts complained of. In my
judgment if a person who, by virtue of his position or in-
fluence, has power to carry out his design, sets himself to the
task of preventing and succeeds in preventing a man from
obtaining or holding employment in his calling to his in-
jury by reason of threats to, or special influence upon a
man's employers, or would be employers, and the design was
to carry out some spite against the man, or had for its object
the compelling him to pay a debt, or any similar object not
justifying the acts against the man, then that person is
liable to the man for the damage consequently suffered."

In that case the threats were against the employer whereby
Giblan was prevented from selling his labor; in this case the
threats and coercion were made to and directly exercised
·upon the plaintiff whereby he was prevented, under the cir-
cumstances alleged in the declaration, from selling ice to the
Dairy Company and no good reason can be found or dis-
tinction made why the same legal principle should not be ap-
plied to both cases. The acts done in each instance are torts
resulting in damage to the plaintiff. To admit a recovery
in the first case, and deny it in the second would be both un-
just and unreasonable. No authority was cited for such a
distinction, and we do not think that any can be found. Such
a distinction would leave one who has suffered an injury
without a remedy for the tort.

JUDGE BOYD, in *Knickerbocker Ice Company* v. *Gardiner
Dairy Company, supra,* said: "It is not altogether easy to

lay down general rules as established by the cases, but some principles are quite well settled by them. It may be safely said that if wrongful, or unlawful means are employed to induce a breach of a contract, and injury ensues, the party so causing the breach is liable in an action of tort. While lawful competition must be sustained and encouraged by the law it is not lawful in order to procure a benefit for himself for one person to wrongfully force a party to an existing contract to break it, and a threat to do an act. which would seriously cripple, if not ruin, such party, unless he does break it, is equivalent to force, as. that term is used in this connection."

It is contended that the plaintiff cannot recover, because it is *in pari delicto* with the defendant in breaking the contract with the Gardiner Dairy Company, and that to allow a recovery would be to permit the plaintiff to take advantage of its own wrong. In the recent case of the *Baltimore & Ohio Railroad Company* v. *The County Commissioners of Howard County,* 113 Md. 404, we had an occasion to consider this subject, and to state the conditions under which a recovery would be denied under the principle here invoked. We need only refer to what was there said to show that that principle has no application to this case. Both the declaration and the evidence show that the plaintiff and defendant were not equally guilty in breaking the contract with the Dairy Company. The act of the plaintiff was not voluntary; but was the result of threat made by the defendant. Under such circumstances the rule contended for does not apply. It was held in the *Knickerbocker case, supra,* that the Gardiner Dairy Company was not a customer of the defendant within the meaning of the second condition, quoted above, of the contract of March, 1906. It was, of course the duty of the plaintiff to minimize the damage resulting from the acts of the defendant. 13 *Cyc.* 71; *Lang* v. *Wagner,* 52 Md. 310; *Sparrows Point Railroad Company* v. *Hackett,* 87 Md. 234; but by the first condition of the contract mentioned the

plaintiff was under an obligation not to buy ice from other sources. But assuming, *ex gratia,* that it might have lessened the damages by buying ice from others its failure to do so would not have *defeated* its right of recovery. And to have bought ice from others to supply the Dairy Company in the situation in which the plaintiff was placed might have resulted in the ruin of its business.

We are, therefore, of opinion that there was error in granting the defendant's first prayer withdrawing the case from the jury.

The rulings on the evidence will now be briefly noticed. There was error in striking out the testimony of Mr. Gardiner, admitted subject to exceptions, to prove the contract of June 29, 1906, alleged in the declaration, between the plaintiff and the Gardiner Company. This evidence was relevant and important, and tended to support a material averment of the declaration; but no substantial injury appears to have been done as Mr. Gardiner was subsequently permitted to prove the contract. We find no error in the second and third exceptions wherein the Court refused to allow Mr. Gardiner to state the reasons given by Mr. Hammond why the plaintiff could not supply ice to the Gardiner Company. This was clearly hearsay. Mr. Hammond was afterwards called, and testified upon this point. The proffer of evidence in the fourth exception was properly refused for the same reason, nor does it appear by the record to have been relevant. There was no reversible error in the fifth and sixth exceptions, as the plaintiff got the benefit of the evidence in the subsequent testimony of the witness. There was error in the seventh and eighth exceptions. The facts sought to be proved were relevant, and the witnesses were competent to testify as to them. The declarations of Mr. Kirkpatrick, made more than six months or a year after the commission of the wrong complained of, were too remote and were properly excluded.

In the form in which the prayer was granted the question of the legal sufficiency of the evidence actually admitted was not raised and it has not been fully discussed; but we have examined it carefully, and as the case must be remanded for a new trial, it is proper to say that the evidence admitted, if believed by the jury, was legally sufficient to support the plaintiff's case.

> *Judgment reversed, a new trial awarded with costs to the appellant above and below.*