509 A.2d 727

**LAKE SHORE INVESTORS**

v.

**RITE AID CORPORATION, et al.**

**No. 1222, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

June 5, 1986.

Shale D. Stiller (Robert B. Levin and Frank, Bernstein, Conaway & Goldman, on brief), Baltimore, for appellant.

Steven K. Fedder (Leslie C. Bender, Davis, Fedder & Allen, M. Albert Figinski, Stephen B. Caplis and Melnicove, Kaufman, Weiner & Smouse, P.A., on brief), Baltimore, for appellees.

Argued before MOYLAN, ADKINS, and ROSALYN B. BELL, JJ.

ADKINS, Judge.

The principal question we must address in this case is whether a defendant who induces cancellation of a contract

may be liable for tortious interference even though no breach of the contract has occurred. A secondary question is whether the record contains a showing of compensatory damages sufficient to withstand a motion for summary judgment.

The party seeking to recover damages for tortious interference is appellant, Lake Shore Investors (Lake Shore). The Circuit Court for Baltimore City granted summary judgment in favor of appellees, Rite Aid Corporation and Rite Aid of Maryland, Inc. (Rite Aid).[1] The court found that factual disputes as to the damages claimed by Lake Shore precluded entry of summary judgment on that issue, but held that Lake Shore's tortious interference claim could not be sustained absent a showing of a breach of the contract with which Rite Aid had purportedly interfered. We hold that the court was correct on the damages point, but erred on the tortious interference issue. Accordingly, we reverse.

## Facts

Some aspects of the controversy between Lake Shore and Rite Aid previously have been before this court and the Court of Appeals. *Lake Shore Investors v. Rite Aid Corp.,* 55 Md.App. 171, 461 A.2d 725 (1983), *aff'd sub nom. Rite Aid Corp. v. Lake Shore Investors,* 298 Md. 611, 471 A.2d 735 (1984). We need not repeat all the history set forth in those opinions. For present purposes it is enough to outline the facts briefly.

In 1975 and 1978 Lake Shore acquired property in Anne Arundel County. It intended to develop that property, or some of it, as a shopping center. To that end, it entered into negotiations looking to the leasing of space in the center to Read's Inc., corporate predecessor of Rite Aid.

---

1. Tortious interference was but one of several claims asserted by Lake Shore. Although not all of the other claims have been adjudicated, the trial court properly certified as final its judgment on the tortious interference count. Md.Rule 2–602(b).

No lease agreement, however, was ever consummated with Read's or Rite Aid.[2]

Lake Shore then leased space in the shopping center to Drug Fair, Inc. Rite Aid learned of this in early 1979 and threatened litigation against Lake Shore unless the latter agreed to include a Rite Aid store in the center. Lake Shore responded that no lease existed between it and Rite Aid.

In August 1979, Lake Shore found itself short of funds. It agreed to sell the shopping center property to BTR Realty, Inc. BTR was aware of Rite Aid's threat to Lake Shore, however, as well as its claim of a leasehold interest, and insisted that the purchase agreement include a clause permitting BTR to withdraw from it if Lake Shore could not furnish BTR with a written release from Rite Aid. Rite Aid, continuing to insist that it had a valid lease with Lake Shore, refused to execute the release. BTR withdrew from the purchase agreement. This suit followed.

### Breach of Contract as an Element of Tortious Interference

Count Two of Lake Shore's second amended declaration against Rite Aid is captioned *"Wrongful Interference With Contracts."* Alleging the facts we have summarized, as well as others, it avers, in pertinent part, that Rite Aid maliciously, with ill-will and spite toward Lake Shore, wrongfully interfered with Lake Shore's contractual undertakings with B.T.R. ... by ... threatening B.T.R. with action that would delay construction of the shopping center ... so that B.T.R. did cancel its contract with Lake Shore.

---

**2.** The circuit court, in an earlier phase of this case, determined that no lease existed between Lake Shore and Rite Aid. We affirmed that determination in *Lake Shore I,* 55 Md.App. at 183, 461 A.2d 725. Since that issue was "not within the ambit of the review granted by the writ of certiorari" in Rite Aid Corp. v. Lake Shore Investors, *supra,* that determination stands "as the law of the case...." *Rite Aid,* 298 Md. at 629, 471 A.2d 735.

Rite Aid moved for summary judgment on this count. Its argument was (and before us, is) that neither the allegations we have quoted nor the facts we have recited (treated as undisputed for purposes of the motion) show that BTR breached its contract with Lake Shore. Instead, the facts show only that BTR exercised its contractual right to withdraw from the purchase agreement when Rite Aid refused to execute the release. This, according to Rite Aid, is fatal, because breach of the contract is an essential element of the tort of tortious interference with that contract. The trial judge agreed, but we do not.

To be sure, there are tortious interference cases in which the tortfeasor caused or induced the breach of the contract. That was true in the leading English case of *Lumley v. Gye*, 2 El. & Bl. 216, 118 Eng.Rep. 749 (1853). It was also true in the leading Maryland case of *Knickerbocker Ice Co. v. Gardiner Dairy Co.*, 107 Md. 556, 69 A. 405 (1908). In *Knickerbocker*, for example, the Court of Appeals thought "[i]t may be safely said that if wrongful or unlawful means are employed to induce the breach of a contract, and injury ensues, the party so causing the breach is liable in an action in tort." 107 Md. at 566, 69 A. 405. Similar cases include *Daugherty v. Kessler*, 264 Md. 281, 286 A.2d 95 (1972), *Baird v. Chesapeake and Potomac Telephone Co.*, 208 Md. 245, 117 A.2d 873 (1955), *Stannard v. McCool*, 198 Md. 609, 84 A.2d 862 (1951), *Cumberland Glass Manufacturing Co. v. DeWitt*, 120 Md. 381, 87 A. 927 (1913), and *Gore v. Condon*, 87 Md. 368, 376, 39 A. 1042 (1898) ("The right to maintain an action can also be sustained, upon the doctrine that a man who induces one of two parties to a contract to break it, intending thereby to injure the other or to obtain a benefit for himself, does the other an actionable wrong."). In each of those cases, the Court recognized that under appropriate circumstances proof of wrongful inducement of a breach of contract could sustain a cause of action for tortious interference with contractual rights. In none of them, however, did the Court hold that the action could not be sustained without proof of a breach of contract.

A parallel line of authority indicates that proof of breach of contract is not an essential element of the tort.  In *Lucke v. The Clothing Cutters and Trimmers Assembly,* 77 Md. 396, 26 A. 505 (1893), a union induced an employer to discharge a nonunion employee.  There was no breach of contract, because the worker was an employee at will.  The evidence nevertheless showed that but for the union's improper actions, the employment likely would have continued.  The Court of Appeals characterized Lucke's action as one "to recover damages for the wrongful and malicious interference of [the union], by which [Lucke] was discharged from his employment and prevented the free exercise of his trade and occupation, and thereby deprived of his means of livelihood."  77 Md. at 397–98, 26 A. 505.  It concluded that the action was viable despite the absence of a breach of contract.  In like vein the Court, in a later case, discussed interference with contracts and unlawful interference with a person's trade, business, or employment.  As to the latter area, it explained that "the authorities both in England and America have established the proposition that any unlawful or wrongful interference by A with the liberty of B to pursue his lawful ... business, or calling, whereby B suffers damage, is actionable...."  *The Sumwalt Ice and Coal Co. v. The Knickerbocker Ice Co.,* 114 Md. 403, 414, 80 A. 48 (1911).  "[U]nlawful or wrongful interference" with one's business interests may, but clearly need not, encompass breach of contract.

More specific is the language of *Goldman v. Harford Road Building Assn.,* 150 Md. 677, 133 A. 843 (1926). There the Court recognized that if the Building Association had induced an owner of land to breach a contract with Goldman, Goldman would have had a cause of action.  150 Md. at 681, 133 A. 843.  But it went on to say that "a right of action is given under this rule [the rule stated in *Cumberland Glass, Sumwalt, Knickerbocker Ice Co.,* and *Gore,* all *supra* ] against a third party *who unjustifiably causes an existing contract to be terminated without breach.*" 150 Md. at 681–82, 133 A. 843 [emphasis supplied].

The principle stated in *Goldman* was reaffirmed in *Wilmington Trust Co. v. Clark*, 289 Md. 313, 329, 424 A.2d 744 (1981). In that case the Court of Appeals observed: "We have recognized that a third party who, without legal justification, intentionally interferes with the rights of a party to a contract, *or* induces a breach thereof, is liable in tort to the injured contracting party" [emphasis supplied]. The use of the disjunctive "or" is, we think, significant; it demonstrates that either breach or other interference with contractual rights may provide a basis for a tort claim.[3]

Quite recently, in *Orfanos v. Athenian, Inc.*, 66 Md.App. 507, 521, 505 A.2d 131 (1986), we had occasion to discuss the elements of a tortious interference claim. We did not list breach of contract as one of them. Instead, we thought the elements of the action were "not substantially different" from those listed in *Restatement (2d) Torts*, § 766. That section, as we shall see, does not require proof of breach of contract to sustain the action. *Orfanos* is consistent with the decision in *Sharrow v. State Farm Mutual Insurance Co.*, 63 Md.App. 412, 492 A.2d 977, *cert. granted*, 304 Md. 362, 999 A.2d 191 (1985). *Sharrow* involved a client who settled a claim directly with the defendant's insurance carrier, thereby depriving the client's lawyer of a contingent fee. There was, of course, no breach of the contract between the client and the lawyer because, as we pointed out, that contract was revocable at the will of the client, and had been effectively terminated. 63 Md.App. at 418. We found no liability for tortious interference on the part of the carrier, because there was no evidence of culpable conduct on its part. But, despite the absence of a breach of contract, we observed: "If, to achieve its own ends, an insurer

---

3. *See also Vane v. Nocella*, 303 Md. 362, 383, n. 6, 494 A.2d 181 (1985): "Maryland law has long recognized the tort of wrongful interference with contractual relations [citing *Rite Aid, supra* ]. This tort provides that a third party who, without legal justification, intentionally interferes with the rights of a party to a contract or induces a breach thereof is liable in tort to the injured contracting party." *And see Continental Casualty Co. v. Mirabile*, 52 Md.App. 387, 449 A.2d 1176, *cert. denied*, 294 Md. 652 (1982).

deliberately induces the claimant to repudiate his retainer by ... coercive or unconscionable conduct, its 'right to settle' cannot save it from liability to the lawyer who has suffered economic detriment from the repudiation." 63 Md.App. at 424, 492 A.2d 977.

These two lines of authority, then, instruct that when a third party intentionally and wrongfully induces a party to breach a contract to the damage of one of the contracting parties, an action for tortious interference will lie. They also appear to tell us that the action may lie when there has been a wrongful interference with contractual rights or expectations, even if there is no breach. We have found only two reported Maryland decisions that suggest or hold that a breach of contract is an essential element of a tortious interference claim.

The first of these cases is *Lake Shore I, supra*. In that opinion we said: "Of course it is necessary to show that a contract exists between two or more parties and that the defendant, wrongfully, without justification, interfered with that contract so as to bring about a breach to the detriment of the one or more parties thereto." 55 Md.App. at 181, 461 A.2d 725. In *Lake Shore I*, however, we were dealing chiefly with the proper measure of damages for tortious interference. The language we have quoted was mere *dictum*, wholly unnecessary to the decision in that case.

More difficult to deal with is *Storch v. Ricker*, 57 Md. App. 683, 471 A.2d 1079, *cert. denied*, 300 Md. 154, 476 A.2d 722 (1984). It is this case that persuaded the Circuit Court for Baltimore City that breach of contract is an essential element of a tortious interference claim. And it is this case that is principally relied upon by Rite Aid in its attempt to persuade us to reach the same conclusion.

*Storch* was a complex matter involving alleged breach of a contract to pay real estate commissions as well as a claim for tortious interference with that contract. The vendor in a real estate contract had lawfully terminated it pursuant to provision in the contract, and no real estate commissions

were due, under the contract, until time of settlement—a time that never arrived because of the termination of the contract. That, we held, disposed of the tortious interference claim. "This cause of action requires breach of a contractual right or obligation." 57 Md.App. at 703–04. Our chief authority for that statement was 3 J. Dooley, *Modern Tort Law,* § 44.03 (1977). Judge Dooley's text does, indeed, support our holding in *Storch.* But we believe that his view of the elements of tortious interference does not go far enough to fully set forth the tort as it exists under Maryland law.

Some ten months after we had decided *Storch,* the Court of Appeals decided *Natural Design, Inc. v. The Rouse Co.,* 302 Md. 47, 485 A.2d 663 (1984). In a scholarly review of the tort of malicious interference with business relationships, Judge Eldridge explained:

As the *Lucke* and *Gore* cases [both *supra* ] illustrate, the two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract. The principle underlying both forms of the tort is the same: under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation.

302 Md. at 69, 485 A.2d 663 [footnote omitted].

The problem with our *Storch* is that we failed to recognize both branches of the single tort that encompasses not only that form of tortious interference with a contract exemplified by wrongful inducement of a breach of contract, but also the broader form that encompasses other sorts of wrongful interference with contractual relations; or indeed, with business expectations, or economic relationships where no contract exists. *See Ellett v. Giant Food, Inc.,* 66 Md.App. 695, 707–09, 505 A.2d 888 (1986) and R.P. Gilbert, P. Gilbert, and R.J. Gilbert, *Maryland Tort Law Handbook,* § 7.6 (1986). That is also the problem with Rite Aid's position in this case.

Modern authority clearly identifies a single tort in the context of the matter at hand. *"The tort* of interference with existing or prospective contractual relations, covered in this Chapter [37], is an intentional tort." 4 *Restatement (2d) Torts* at 4 [emphasis supplied]. And "[t]he liability for inducing breach of contract is now regarded as but one instance, rather than the exclusive limit, of protection against improper interference in business relations." *Id.* at 9.

An analogy is found in the tort of defamation. Libel and slander are two branches of that tort. But their essential elements are the same, and in many instances, it does not make any difference in which form plaintiff elects to cast his complaint. *See, e.g., Hearst Corp. v. Hughes,* 297 Md. 112, 466 A.2d 486 (1983), where the court found it unnecessary to determine whether broadcasting a defamatory oral statement over television is libel or slander, because the words published by the television station constituted a defamatory publication, and *General Motors Corp. v. Piskor,* 277 Md. 165, 352 A.2d 810 (1976), where court found it unnecessary to decide whether conduct of defendant's employees constituted libel or slander. *See also Maryland Tort Law Handbook, supra,* § 6.2 (1976): "The distinction [between libel and slander] is somewhat trivial, inasmuch as there is really no practical benefit in denominating a defamation action as either variety when the statement is defamatory *per se."* Varying proof requirements follow if, for example, the plaintiff is a public figure, *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a private figure, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), or if there is a media defendant, *Philadelphia Newspapers, Inc. v. Hepps,* —— U.S. ——, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). But the basic tort is still defamation. So it is with the tort of malicious interference with business. *See Natural Design* at 69–70. There is but one tort, although it may be alleged, proved and defended against in various ways.

Section 766 of the *Restatement (2d)* outlines the scope of the tort:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Section 766B adds:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

Wrongfully inducing a breach is surely one way of committing this tort, but it is equally surely not the only way. "[I]t is not necessary to show that the third party was induced to breach the contract. Interference with the third party's performance may be by prevention of the performance...." *Restatement (2d) Torts,* § 766, comment k. *Accord:* W. Prosser and W. Keeton, *The Law of Torts,* § 129 (5th ed. 1984); Harper, *Interference with Contractual Relations,* 47 Nw.U.L.Rev. 873, 883 (1953).

■ In view of these authorities, we hold that a person who intentionally and wrongfully hinders contract performance, as by causing a party to cancel the contract, and thereby damages a party to the contract, is liable to the injured party even if there is no breach of the contract. This sort of conduct is encompassed within the tort that we shall denominate interference with economic relations, and it includes tortious interference with contractual relations.

Accordingly, we overrule *Storch v. Ricker* to the extent that it is inconsistent with this opinion.[4]

■ This holding in turn compels us to reverse the summary judgment in favor of Rite Aid since, as we shall shortly explain, we also reject its contentions as to damages. The allegations in Lake Shore's declaration, together with the other facts before the trial court, are sufficient to make out its tortious interference claim, even though there was no breach of the contract between Lake Shore and BTR. The fact that BTR used the "escape clause" in the contract to avoid performance is of no moment. There was a contract between Lake Shore and BTR; the "escape clause" was a condition precedent to performance of the contract, not to its formation. *See* S. Williston and W. Jaeger, 5 *Williston on Contracts*, § 666A (3d ed. 1961). The contract established a business relationship between Lake Shore and BTR. If Lake Shore can prove that Rite Aid intentionally and improperly interfered with that relationship by wrongfully inducing BTR to withdraw from the contract, Lake Shore will have made out a cause of action, provided it can also show damages caused by Rite Aid's culpable conduct.[5]

## Damages

On the subject of damages, Rite Aid contends that the trial court's judgment should be affirmed in any event because Lake Shore "failed to allege any facts in response to Rite Aid's motion for summary judgment to establish that it had sustained damages as a result of Rite Aid's

---

**4.** This holding, had we applied it in *Storch*, would not have changed the result in that case. As an alternative basis for our decision there, we held that even if the contract had been breached, the allegedly tortious interferer would not have been liable because his conduct was not wrongful. 57 Md.App. at 704, 471 A.2d 1079.

**5.** In *Lake Shore I* we observed that there was evidence before the trial court from which one could infer that Rite Aid deliberately interfered with the contractual relationship between Lake Shore and BTR with the purpose to injure Lake Shore. 55 Md.App. at 181, 461 A.2d 725.

conduct." The trial court found "several disputes of material fact regarding the extent of actual damages, sufficient to preclude an entry of summary judgment."

Rite Aid initially attempted to raise that issue by cross-appeal, but the cross-appeal was dismissed because of a procedural defect. It now says the issue is before us anyway because an appellate court may affirm a decision of a trial court on any ground adequately shown by the record, even if it was not the ground relied on by the trial court. *Robeson v. State*, 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980). To that argument Lake Shore responds that Rite Aid's motion for summary judgment on the damages issue was denied, and the denial of a motion for summary judgment is not appealable. *Metropolitan Mortgage Fund, Inc. v. Basiliko*, 288 Md. 25, 29, 415 A.2d 582 (1980).

We find it unnecessary to resolve this dispute. Assuming, without deciding, that the issue is properly before us, we conclude that Rite Aid's contention is meritless.

■ Rite Aid relies on Md.Rule 2–501(b) which provides that when "a motion for summary judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely upon allegations contained in the pleadings, but shall support the response by an affidavit or other written statement under oath."

It is true that Lake Shore's response to Rite Aid's motion for summary judgment was somewhat light on factual specifics on the matter of damages, and it was not under oath. But Rite Aid's motion was based largely on depositions of two of Lake Shore's partners. These were under oath. They contain material sufficient to establish factual disputes and conflicting inferences on the damages question. There was no need for Lake Shore to refile these depositions as part of its answer; that would simply have produced unnecessary duplication of the large amount of paper already before the court. Because the depositions

raised factual conflicts, the trial judge did not err in denying the motion for summary judgment on that ground. Md.Rule 2–501(e).

Since, however, we have held that the judge erred on the breach of contract issue, we must reverse.

JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEES TO PAY THE COSTS.