**Brad M. COGAN, M.D.**

v.

**HARFORD MEMORIAL HOSPITAL, et al.**

**Civ. No. Y92–616.**

United States District Court, D. Maryland.

Feb. 24, 1994.

---

Neil R. Peterson, Bryn Mawr, PA, for plaintiff.

Ward B. Coe, III, Wilbur D. Preston, Jr., and Gerard J. Ganeng, Baltimore, MD, for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Harford Memorial Hospital, a defendant,[1] ("Hospital") seeks summary judgment against the claims of Brad M. Cogan, M.D., under the Sherman Act, 42 U.S.C. § 1983 and under Maryland common law.

### I.

The Hospital is located in Havre de Grace, Maryland and is owned by Defendant Upper

---

1. Leonard E. Cantrell, Barbara R. Aselage, Jeffrey Flick, members of the administrative staff at the Hospital, and Upper Chesapeake Health System Inc. are also defendants in this case.

Chesapeake Health Systems, Inc. ("UCHS"). On February 29, 1984 the Hospital contracted with Cogan to act as the Chief of Radiology for five years. In 1988, the Hospital and Cogan renegotiated and modified the contract increasing Cogan's compensation and extending the contract until May 25, 1993 subject to termination by either party providing a 120 day written notice.

Cogan had numerous discussions with the administration concerning his compensation, seeking compensation on a fee-for-service basis [2] rather than through an annual salary. Cogan claims this was necessary so he could hire a third radiologist. The Hospital was uncomfortable with a fee-for service arrangement fearing it could lead to higher charges to patients.

In December 1990, Cogan began discussing the possibility of opening a radiology clinic in Harford County with NMR of America, to provide testing with magnetic resonance imaging ("MRI") separate from the Hospital. The Hospital expressed opposition to such an arrangement and Cogan indicated his desire to discuss the MRI clinic if the Hospital would renegotiate the terms of his contract and change to a fee-for-service arrangement.

The Hospital agreed to discuss the renegotiation of Cogan's contract into a fee-for-service contract. This renegotiated contract required Cogan's radiology group to agree not to maintain any financial or professional interest with any competing medical facility within twenty miles of a hospital owned by UCHS.[3] The parties were unable to reach an agreement and on March 1, 1991, the Hospital informed Cogan of its intention to terminate his employment contract as of June 28, 1991.

In October 1991, Cogan formed Cogan & Smith, P.A., a partnership with Dr. Steven Smith, his former associate at the Hospital. This Professional Association signed a contract in November 1991 under which it agreed to act as the managing director of a radiology clinic in Bel Air, Maryland. The facility would be owned and funded by Harford County Limited Partnership ("HCLP"). NMR of American is a general partner of HCLP.

The clinic, known as the Colonnade Imaging Center, had a lower volume of business than anticipated because of the competition from another radiology clinic in Bel Air and because many patients in the area have ties to doctors in Baltimore City. Cogan also contends that the Hospital's policy against sending patients to facilities not accredited by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") impeded the clinic's business.

JCAHO has a manual for hospitals which states that any inpatient that needs to be transferred to a facility for MRI services must be sent to a facility which meets JCAHO's standard. The Hospital interpreted this to mean that patient referrals for MRI services from the Hospital had to be sent to facilities accredited by JCAHO. The Hospital claims that the policy affected no more than seven patients but, Cogan contends it affected 15,000 patients. Cogan has characterized this policy as a "group boycott" against the Colonnade.

Plaintiff contends that the defendants violated the Sherman Act, breached the contract between the Hospital and him, interfered with his contractual relations, wrongfully discharged him and deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. Cogan also seeks punitive damages.

## II.

Summary judgment is a vital procedural tool to avoid wasteful trials and may be particularly important in antitrust litigation to prevent lengthy and drawn out trials that have a chilling effect on competitive market forces. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 593–94, 106 S.Ct. 1348, 1359, 89 L.Ed.2d 538 (1988); *see Oksanen v. Page Memorial Hospital,* 945 F.2d 696 (4th Cir.1991), *cert. denied,* —— U.S.

---

**2.** A fee-for-service billing arrangement allows doctors to bill patients and their insurers directly.

**3.** In addition to Harford Memorial Hospital, UCHS owns Fallston General Hospital in Fallston, Maryland.

——, 112 S.Ct. 973, 117 L.Ed.2d 137 (1992). Summary judgment is appropriate only if there are no genuine issues of material fact. Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This Court must resolve all reasonable inferences and questions of law in the nonmoving party's favor. *Id.* at 255, 106 S.Ct. at 2513; *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

The moving party has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. at 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party "who may not rest upon [ ] mere allegations or denials." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Summary judgment is appropriate if the nonmoving party fails to show the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. A mere scintilla of evidence supporting the case is insufficient. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Ash v. United Parcel Service, Inc.,* 800 F.2d 409, 411–12 (4th Cir. 1986). In the context of antitrust litigation the range of inferences that may be drawn from ambiguous evidence is limited and the nonmoving party must set forth facts that tend to preclude an inference of permissible conduct. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356.

### A.

■ Cogan filed suit under §§ 1 and 2 of the Sherman Act. To have standing to bring an antitrust claim, plaintiff must show an antitrust injury by demonstrating that the alleged injury results from some anti-competitive conduct. *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *Todorov v. DCH Healthcare Authority,* 921 F.2d 1438, 1450 (11th Cir.1991).

■ There is no evidence showing that competition in any relevant market has been harmed, reduced or impacted by the termi-nation of Cogan's contract or the alleged group boycott of the Colonnade by the implementation of the Hospital's policy. Cogan testified that the alleged boycott has caused his facility to loose 15,000 patient referrals. However, the evidence shows that the Hospital issued a policy that in-patient MRI transfers must be transferred to radiology centers that are accredited by JCAHO and that the Hospital only referred seven in-patients to outside radiology facilities last year. The record also shows that the Colonnade received fewer patients than anticipated because another radiology center opened during the same period and that many patients in the area had established relationships with doctors in Baltimore City.

Moreover, Cogan has not been eliminated as a competitor in the market. He is currently a partner at Cogan & Smith, P.A., which operates the Colonnade. The only harm asserted is his inability to continue working at the Hospital. This asserted injury to himself as a competitor of the Hospital is not the "type the antitrust laws were intended to prevent." *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697; *Todorov,* 921 F.2d at 1448. Cogan's alleged harm is not compensable under the Sherman Act.

### 1.

■ For a contract or conspiracy in restraint of trade to be actionable under § 1 of the Sherman Act, concerted action must be present. *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 141–42, 88 S.Ct. 1981, 1986, 20 L.Ed.2d 982 (1968). Concerted action refers to two or more legally independent actors who act together pursuant to an express or implied agreement. *Albrecht v. Herald Co.,* 390 U.S. 145, 149, 88 S.Ct. 869, 871, 19 L.Ed.2d 998 (1968); *Oksanen,* 945 F.2d at 702. Plaintiff contends that the Hospital, its medical doctors and UCHS conspired to restrain the provision of radiology services by terminating his contract and allegedly boycotting his private practice.

■ Assuming Cogan is alleging a group boycott, which is "often listed among the class of economic activity that merit per se invalidation under § 1," *Northwest Wholesale*

*Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 293–94, 105 S.Ct. 2613, 2619, 86 L.Ed.2d 202 (1985), he must present a threshold case showing that the challenged activity is manifestly anti-competitive conduct that would always, or almost always, tend to restrict competition and decrease output. *Id.* at 298, 105 S.Ct. at 2621; *Business Electronics, Corp. v. Sharp Electronics, Corp.*, 485 U.S. 717, 723, 108 S.Ct. 1515, 1518, 99 L.Ed.2d 808 (1988).

■ Cogan contends that the alleged group boycott gives rise to a per se violation of the antitrust laws. However, limiting the radiology centers to which doctors at the Hospital may refer an in-patient transfer is discretionary. Such restrictions help the Hospital provide more efficient and higher quality services to its patients, and reduce its malpractice exposure. Cogan contends that the alleged group boycott was intended to exclude him from the practice of radiology by decreasing competition. However, there is no evidence supporting such an argument. Further, the per se approach has been limited to cases in which the economic impact of certain practices is immediately obvious. *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458–59, 106 S.Ct. 2009, 2018, 90 L.Ed.2d 445 (1986). This is not such a case, making the rule of reason applicable.

■ To prove an action under § 1 of the Sherman Act, the plaintiff must demonstrate that the defendants' actions actually had an adverse effect on competition as a whole in the relevant market. *See* 15 U.S.C. § 1. To keep the antitrust laws from becoming trivialized, the reasonableness of a restraint is evaluated by determining its impact on competition in the relevant market; proof of harm to an individual competitor will not suffice. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 328–41, 110 S.Ct. 1884, 1884–93, 109 L.Ed.2d 333 (1990). "To meet this burden [plaintiff] must prove what market he contends was restrained and that the [Hospital] played a significant role in the relevant market." *Oksanen*, 945 F.2d at 708.

■ Plaintiff suggests the relevant geographic market is Harford County and south-western Cecil County arguing that the relevant market is self-defined and is limited because most of the referrals for radiology services come from doctors whose patients live in these two areas.

■ The plaintiff bears the burden of proving the relevant geographic market. *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992). It is "that geographic area in which there is effective competition in the sale and distribution of particular products or services and in which persons or entities actually do, or potentially may, compete in the conduct of their business operations." *Steuer v. Nat'l. Medical Enterprises, Inc.*, 672 F.Supp. 1489, 1510 (D.S.C.1987), *aff'd,* 846 F.2d 70 (4th Cir. 1988). "It is the geographic area in which a purchaser can practically turn to other sellers for products or services, in the event that the defendant seeks to raise its prices or restrict output." *Miller v. Indiana Hosp.*, 814 F.Supp. 1254, 1262 (W.D.Pa.1992). The relevant geographic market must include those facilities which referring physicians and patients would perceive as attractive alternatives to the Colonnade. *See Id.; Steuer,* 672 F.Supp. at 1514.

The testimony of the physicians submitted for consideration shows that the market for radiology services was not limited to Harford and Cecil Counties, but also included Baltimore City and the Counties of Baltimore, Howard and Kent. The assumption that 80% of Cogan's patients came from Harford County and Cecil Counties does not demonstrate that those patients do not or would not travel to other facilities to obtain radiology services. *See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir.1991) (where a company competes does not define the market).

Cogan also contends that the deposition of the Executive Director of the Maryland Health Care Cost Review Commission, John Comers, confirms that the relevant geographic market is eastern Harford County and southwestern Cecil County. However, this evidence does not support this conclusion because Mr. Comers testified that Harford Memorial competes with Franklin Square,

**1020**

Greater Baltimore Medical and Baltimore County General Hospitals, all located in Baltimore County.

To allow a jury to make a finding as to the geographic market, Cogan must provide the Court with expert testimony on this highly technical economic question. Looking at the evidence in the light most favorable to the plaintiff, no reasonable jury could determine the relevant market based on the evidence presented.[4]

Plaintiff must also prove that the Hospital has significant market power. Market power means the "ability to injure consumers by curtailing output and raising prices." *Steuer*, 672 F.Supp. at 1504.

Cogan argues that the Hospital's only meaningful competition is from an Upper Chesapeake facility and, therefore, it controls the hospital beds in the area. However, this evidence alone does not demonstrate that the Hospital has significant market power. There is no evidence that the Hospital can increase prices or decrease output in a relevant market or that the alleged boycott has decreased the quality of radiology services to patients. *See Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir.1993); *see also Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848, 855 (9th Cir.1977) (whether plaintiff's business has suffered due to the absence of the potential referrals has little consequence). Thus, Cogan's claims must fail because of his inability to show that the Hospital's activities have caused detrimental effects on trade and summary judgment is appropriate against Cogan's claims under § 1 of the Sherman Act.

**2.**

In addition to the claim under § 1 of the Sherman Act, plaintiff asserts that the defendants have also violated section § 2. To establish such a violation plaintiff must first prove defendants' "possession of monopoly power in the relevant market." *United States v. Grinnell Corp.*, 384 U.S. 563, 570, 86 S.Ct. 1698, 1703, 16 L.Ed.2d 778 (1966). Because plaintiff's § 1 claim failed due to lack of evidence of a relevant market and market power, it follows that his § 2 claim is similarly deficient.

Stated simply, Cogan's position is that he has been harmed as an individual competitor. He has not shown that the defendants' activities adversely impacted price, quality or output of medical services offered to consumers. *See Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 31, 104 S.Ct. 1551, 1568, 80 L.Ed.2d 2 (1984) (without a showing of actual adverse effect on competition, a plaintiff cannot make out a case under the antitrust laws).

**B.**

Cogan next contends that the Hospital violated his due process rights when it terminated his contract and revoked his medical staff privileges without a hearing. Plaintiff must show that the Hospital acted under color of state law to deprive him of rights, privileges and immunities which are protected by the Fourteenth Amendment. *See* 42 U.S.C. § 1983; *Modaber v. Culpeper Memorial Hospital, Inc.*, 674 F.2d 1023 (4th Cir. 1982).

The Hospital is a private corporation and the individual defendants are agents and officers of the Hospital. Section 1983 cannot apply unless Cogan shows that the state was responsible for the Hospital's actions. Plaintiff offers no evidence showing state action or a deprivation of a constitutional right. Therefore, summary judgment is appropriate against the § 1983 claim.

**C.**

Plaintiff also maintains the Hospital breached the terms of his contract because it terminated his existing agreement when he

---

**4.** The parties do not seem concerned with the identity of the product or the consumers. Generally to prove injury to competition in a rule of reason case, the plaintiff must prove the relevant market and show the effects upon competition within that market. This requires an analysis of the relevant product market. In this case, the consumers would be the patients who purchase radiology services on the advice of their physicians. The product would be the referrals for images and interpretations.

refused to sign a renegotiated contract. The undisputed evidence shows that the Hospital, pursuant to the contract, provided plaintiff with 120 days written notice prior to the termination of the at-will contract and that the negotiations occurred at-arms-length between the parties.

Plaintiff also contends that the Medical Staff Bylaws governing the termination of certain physicians is applicable to him. However, these bylaws are only applied when a physician is terminated for unprofessional conduct or incompetence. Here, it is undisputed that plaintiff was not terminated for such reasons and summary judgment will be granted on the claim for breach of contract.

### D.

Plaintiff asserts that the defendants caused him to be denied the benefit of his then existing contract with the Hospital because they threatened a boycott of his private practice. In Maryland, to prove interference with a contract, a plaintiff must show: 1) the existence of a contract between plaintiff and a third party; 2) defendant's knowledge of that contract; 3) defendant's intentionally interference with that contract; and 4) resulting damages to the plaintiff. *Fowler v. Printers II, Inc.,* 89 Md.App. 448, 598 A.2d 794, 802 (1991), *cert. denied,* 325 Md. 619, 602 A.2d 710 (1992). Only a third party who is not party to the contract can be held liable for tortious interference with a contract. *Brand Iron, Inc. v. Koehring Co.,* 595 F.Supp. 1037 (D.Md.1984); *Wilmington Trust Co. v. Clark,* 289 Md. 313, 424 A.2d 744, 289 (1981); *Easton Nissan, Inc. v. Ford Motor Credit Co.,* 755 F.Supp. 671, 674–75 (D.Md.1991).

Plaintiff also asserts the broader tort of interference with economic advantage, *K & K Management v. Lee, Inc.,* 316 Md. 137, 557 A.2d 965, 973 (1989); *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 485 A.2d 663, 674 (1984); and maintains that, in an effort to force him to sign the renegotiated contract, the defendants told him that they would forbid physicians from making referrals to his private practice, thus interfering with his prospective economic advantage.

*Lake Shore Investors v. Rite Aid Corporation,* 67 Md.App. 743, 509 A.2d 727 (1986). "[T]he broader form ... encompasses other sorts of wrongful interference with contractual relations; or indeed, with business expectations, or economic relationship where no contract exists." *Id.* 509 A.2d at 731. A person who intentionally and wrongfully hinders contract performance and damages a party is liable to the injured party. *Id.* at 732.

The parties agree that the Hospital cannot be held liable because it is a party to the contract. The medical staff and administration are agents and officers of the hospital and are also parties to the contract. There is no evidence that they acted outside the course of their employment for the benefit of the hospital. Further, there is no evidence that the defendants wrongfully hindered the contract negotiation process or contract performance. *See K & K Management,* 557 A.2d at 979 (unlawful means include "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith"). A reasonable trier of fact could not find that the defendants interfered with plaintiff's contract relations.

### E.

Plaintiff also attempts to use the doctrine of equitable estoppel as an affirmative cause of action. In Maryland, this doctrine can be used as a defense to a claim or to avoid a defense, but not as the basis for an affirmative cause of action. *See Sav–A–Stop Services, Inc. v. Leonard,* 44 Md.App. 594, 410 A.2d 603, 607 (1980), *aff'd,* 289 Md. 204, 424 A.2d 336 (1981). Thus, this claim is dismissed as a matter of law.

### F.

Finally, plaintiff claims that the termination of his contract constituted an abusive or wrongful discharge. These torts are exceptions to the employment-at-will doctrine which generally hold that an at-will employee may be discharged at any time, with or without cause. *See Adler v. American Standard Corporation,* 291 Md. 31, 432 A.2d 464, 467

**1022**

(1981); *Lee v. Denro, Inc.*, 91 Md.App. 822, 605 A.2d 1017, 1023 (1992).

 The plain language of Cogan's contract states that "it is mutually understood and agreed that ... [Cogan is] an independent contractor." It also defines the relationship between the Hospital and Cogan: "that Hospital shall neither have nor exercise any control over the methods by which radiologist shall perform his work." Next, looking at the evidence in the light most favorable to plaintiff, there is no evidence showing that the Hospital exercised immediate and direct control over his performance and manner of radiology services. *See Criminal Injuries Compensation Bd. v. Gould*, 273 Md. 486, 331 A.2d 55, 74 (1975) (an employer/employee relationship is evident when the employer exercises "immediate and direct" dominion and control over the manner and performance of the services). Further, there are no cases in Maryland that address the issue of extending to independent contractors the right to sue for abusive or wrongful termination of an "employment" relationship. However, state courts in California and Pennsylvania have held that a cause of action for Wrongful discharge arising out of the employment relationship are not available to an independent contractor. *Abrahamson v. NME Hosps., Inc.*, 195 Cal. App.3d 1325, 241 Cal.Rptr. 396, 399 (1987); *Adams Assocs. Inc. v. Rimbach Publishing, Inc.*, 360 Pa.Super. 72, 519 A.2d 997 (1987).

In either event, plaintiff's contract was terminable at will upon written notice. There is no evidence from which a jury could find any illegal or wrongful acts.

### G.

Finally, there is no cognizable cause of action in Maryland for punitive damages under the facts of this case.

### ORDER

In accordance with the attached Memorandum it is this 24th day of February, 1994, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment BE, and the same IS, hereby GRANTED; and

2. That the judgment BE, and the same IS, hereby entered in favor of Defendants; and

3. That a copy of this Memorandum and Order be mailed to counsel for the parties.