471 A.2d 735

**RITE AID CORPORATION et al.**

v.

**LAKE SHORE INVESTORS.**

**No. 86, Sept. Term, 1983.**

Court of Appeals of Maryland.

March 7, 1984.

612

Steven K. Fedder, Baltimore (Judith E. Norton and Goldman & Fedder, P.A., Baltimore, on brief), for appellants.

Shale D. Stiller, Baltimore (Robert B. Levin and Frank, Bernstein, Conaway & Goldman, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON and COUCH, JJ., and CHARLES E. ORTH, Jr. and JAMES C. MORTON, Jr., Retired, Specially Assigned Judges.

CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

The only concern of this appeal is the measure of damages recoverable in an action for the tort of interference with a contract and for the tort of injurious falsehood as it pertains to slander of title or disparagement of real property.[1]

## I

Lake Shore Investors (Lake Shore) instituted an action in the Court of Common Pleas of Baltimore City, now the Circuit Court for Baltimore City, against Rite Aid Corporation and Rite Aid of Maryland, Inc. (Rite Aid) seeking damages for "False and Fraudulent Claim of Lease" and for "Wrongful Interference with Contracts."[2] The claim of

---

1. After decision by the Court of Special Appeals in *Lake Shore Inv. v. Rite Aid Corp.*, 55 Md.App. 171, 461 A.2d 725 (1983), we granted Rite Aid's petition for a writ of certiorari and ordered that the writ issue. Our order specified that review shall be limited solely to the following:

    "Did the trial court apply the correct measure of damages to Lake Shore's claim of injurious falsehood and tortious interference with a land sale contract?"

    Therefore we are not concerned here with the elements of the two torts except as they may pertain to damages. For the purpose of decision in accord with our order we assume that the causes of action have been sufficiently proved. We proceed directly to ascertain the measure of damages for commission of the two torts.

2. Two other counts in the narr alleging violation of Maryland Code (1975, 1983 Repl.Vol.) § 11–204 of the Commercial Law Article and

injurious falsehood arose from Rite Aid's representations that a valid lease agreement on certain property existed between it and Lake Shore. The claim of wrongful interference with a contract arose from the cancellation by BTR Realty, Inc. of an agreement whereby it was to purchase certain property from Lake Shore. Rite Aid claimed that a portion of this property was subject to its alleged lease with Lake Shore. Because of Rite Aid's claim, BTR Realty, Inc. insisted on a clause in the purchase agreement to the effect that it could withdraw from the agreement if Lake Shore did not furnish a written release from Rite Aid. When the release was not forthcoming, BTR Realty, Inc. withdrew from the contract.

The grant of a pre-trial motion for a partial summary judgment made by Lake Shore and the denial of such a motion by Rite Aid resulted in a judgment as a matter of law that there was no valid lease between Lake Shore and Rite Aid. In that posture, trial commenced before a jury. During the presentation of Lake Shore's case, the trial judge ruled that damages must be measured under the contractual "benefit of the bargain" rule which he defined to mean the difference between the fair market value of property at the time of a tortious interference with a contract and the contractual price for the purchase of the property. He noted that he would sustain the objection to the admissibility of evidence regarding any interim expenses. "Specifically mortgage interest, real estate tax, insurance premiums and engineering expenses." He explained later:

> "It seems to me that all we are talking about would be the contract price of the sale. The property, the total package was sold, or was under contract of sale for x hundred thousand dollars. Then the only other evidence that is admissible on damages would be testimony bearing on the actual value of the property sold under that contract at the time of the tort."

---

"Malicious Conduct" were disposed of by the sustaining of a demurrer.

Lake Shore did not offer evidence of damages under the limitations imposed by the judge. When the court refused to admit evidence of damages measured under a tort standard, Lake Shore abided by a proffer of the amount of damages calculated under that standard. At the conclusion of Lake Shore's case the trial judge granted the request of Rite Aid for a directed verdict as to both injurious falsehood and interference with a contract.[3]

The Court of Special Appeals believed that "the trial court erred in limiting the evidence of damages to the 'benefit of bargain.' [Lake Shore] should have been permitted to prove such damages as would reasonably flow from the tortious contractual interference by Rite Aid." *Lake Shore Inv. v. Rite Aid Corp.*, 55 Md.App. 171, 182, 461 A.2d 725 (1983). It

---

**3.** The trial judge explained:
    "It is my understanding of the Maryland law that with respect to the tort of malicious interference of a contract, an element of the tort is inducement of breach resulting in pecuniary loss. And with respect to the tort of ... injurious falsehood, an element of the tort itself is special damages.
    "The plaintiff, having proved no damages in this case, they have not proved the tort and, therefore, a directed verdict is the appropriate disposition."
The judge observed, "It is the evidence of actual damages that has been withheld by [Lake Shore]," and added, "The plaintiffs may proceed as the plaintiffs choose."
In regard to this, the Court of Special Appeals opined:
    "At that time, [Lake Shore] was put to the choice of going forward and introducing damages under the 'benefit of bargain' theory or suffering the entry of a directed verdict in favor of Rite Aid. Had [Lake Shore] gone forward the trial court might have determined that they had waived any other theory and thus they had, for practical purposes on appeal, slammed the door in their own face. Instead [Lake Shore] chose to engage in a strategic withdrawal so that it might 'live to fight another day.'" *Lake Shore Inv. v. Rite Aid Corp.*, 55 Md.App. at 182, 461 A.2d 725.
    The intermediate appellate court was presented with the question of whether Lake Shore's submission to a directed verdict under such circumstances waived the issue of the measure of damages on appeal. It held that the issue was not waived. *Id.* The propriety of that ruling is not before us. Maryland Rule 813 a.

reversed the judgment in favor of Rite Aid and remanded the case for a new trial.[4]  *Id.* at 184, 461 A.2d 725.

## II

It is firmly established that both injurious falsehood (sometimes known as disparagement or slander of title) and wrongful interference with contractual relations are actionable torts. W.L. Prosser, *Handbook of the Law of Torts,* § 128 (injurious falsehood) and § 129 (interference with contractual relations) (4th ed. 1971). They have long been so recognized in Maryland. *Gent v. Lynch,* 23 Md. 58, 63 (1865) (injurious falsehood); *Knickerbocker Co. v. Gardiner Co.,* 107 Md. 556, 566, 69 A. 405 (1908) (interference with contractual relations). Opinions of this Court concerning interference with a contract have been relatively numerous. *See Sumwalt Co. v. Knickerbocker,* 114 Md. 403, 413–416, 80 A. 48 (1911); *Cumberland Glass Mnf'g. Co. v. DeWitt,* 120 Md. 381, 392, 87 A. 927 (1913), *aff'd.* 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); *Goldman v. Building Assn.,* 150 Md. 677, 681–683, 133 A. 843 (1926); *Stannard v. McCool,* 198 Md. 609, 616–617, 84 A.2d 862 (1951); *Horn v. Seth,* 201 Md. 589, 593, 95 A.2d 312 (1953); *McGinnis v. Chance,* 247 Md. 393, 401, 231 A.2d 63 (1967); *Rinaldi v. Tana,* 252 Md. 544, 545, 250 A.2d 533 (1969); *Daugherty v. Kessler,* 264 Md. 281, 285–287, 286 A.2d 95 (1972). On the other hand, injurious falsehood in the form of slander of title to real property did not come before this Court again until 107 years after *Gent* when we decided *Beane v. McMullen,* 265 Md. 585, 607–610, 291 A.2d 37 (1972).[5] The tort has not been before us since. *Cf.*

---

4. The Court of Special Appeals also held that the trial court did not err in granting Lake Shore's motion and denying Rite Aid's motion for partial summary judgment. 55 Md.App. at 183–184, 461 A.2d 725. The propriety of these rulings is not before us. Maryland Rule 813 a.

5. *Gent v. Lynch,* 23 Md. 58 (1865), did not discuss the elements of the tort of slander of title except to state that the plaintiff must show malice, which it did not define. *Id.* at 63. The Court in *Beane v. McMullen,* 265 Md. 585, 607–610, 291 A.2d 37 (1972), quoting extensively from W.L. Prosser, *Handbook of the Law of Torts,* § 129, pp.

*Hopkins C. Co. v. Read Drug & C. Co.*, 124 Md. 210, 92 A. 478 (1914) (slander of personal property). The Court of Special Appeals has had the opportunity to deal with the tort on two occasions before the instant case—in *Horning v. Hardy,* 36 Md.App. 419, 424–431, 373 A.2d 1273, *cert. denied,* 281 Md. 739 (1977) and in *Dixon v. Process Corp.,* 46 Md.App. 198, 203–209, 416 A.2d 1295 (1980). In each of these cases the focus was on "conditional privilege."

None of the opinions of the two appellate courts has expressly addressed or definitively answered the question now before us, namely, how the damages recoverable under the two torts are to be measured. In the case at hand the parties, at trial, before the intermediate appellate court and before us, the trial judge, and the Court of Special Appeals in its opinion, made no distinction between the two torts with respect to the measure of damages. Apparently they proceeded on the assumption that liability for damages under each tort was measured by the same test. We do not find this to be so.[6]

### III

We first consider how damages are to be measured for interference with a contract. The test has not been firmly established by judicial opinions. As the Court of Special

---

919–922 (4th ed. 1971) made a much more valuable contribution to the clarification of the tort in Maryland.

**6.** Professor Prosser stated that interference with a contract and injurious falsehood, as well as defamation and the broader tort of interference with prospective economic relations, "are all different phases of the same general wrong of depriving the plaintiff of beneficial relations with others." Prosser, *Law of Torts,* § 128, p. 926. He observed,

"The refined distinctions which have grown up as to the four cause of action are in part due to the accident of historical development, in part a matter of the weight attached to the importance of the plaintiff's interests. . . . At some distant future day, when separate 'torts' have lost their significance in the eyes of the law, the common basis of all four may lead to some comparison and overhauling, which will make them more consistent with one another." *Id.*

That day has not yet come.

Appeals pointed out, 55 Md.App. at 179, 461 A.2d 725, Professor Prosser found that there were three lines of cases. He described them:

"[O]ne line of cases tends to adopt the contract measure of damages, limiting recovery to those damages which were within the contemplation of the parties when the original contract was made. Another, apparently somewhat more uncertain of its ground, has applied a tort measure, but has limited the damages to those which are sufficiently 'proximate,' with some analogy to the rules as to negligent torts. A third, perhaps the most numerous, has treated the tort as an intentional one, and has allowed recovery for unforeseen expenses, as well as for mental suffering, damage to reputation, and punitive damages, by analogy to the cases of intentional injury to person or property." Prosser, § 129, pp. 948–949 (footnotes omitted).

Professor Prosser left no doubt that he thought that the third line of cases was the most persuasive: "In the light of the intent and the lack of justification necessary to the tort, this seems the most consistent result." *Id.,* § 129, p. 949.

Professor D.B. Dobbs also found that "[t]he authorities are both divided and uncertain" as to whether the interference with a contract tortfeasor is liable under tort or contract tests. D. Dobbs, *Handbook on the Law of Remedies,* § 6.4, p. 461 (1973). He thought that the ultimate weight of the cases on each side is difficult to evaluate. He observed:

"[T]he more liberal authority on the issue is just about as ambiguous as the more restrictive, and it is difficult to feel that the issue has been completely foreclosed by either group of cases." *Id.* at 462.

But he declared that "[t]here is a good deal to be said for the view that the tortfeasor is liable under tort rather than contract tests." *Id.*

Restatement, Second, Torts, § 774A (1979) reflects Professor Prosser's preference and Professor Dobbs' inclination. Comment d to the section states flatly:

"The action for interference with contract is one in tort and damages are not based on the contract rules, and it is not required that the loss incurred be one within the contemplation of the parties to the contract itself at the time it was made."

Section 774A reduces Prosser's view to specifics. It provides:

"(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

(a) the pecuniary loss of the benefits of the contract or the prospective relation;

(b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

(2) In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment."

Comment a points out that "[T]his Section states only the rules applicable to the recovery of compensatory damages. Since the tort is an intentional one, punitive damages are recovered in these actions under appropriate circumstances."[7]

---

7. In oral argument before us, counsel for Rite Aid suggested that Professor Prosser and the Restatement were wrong in espousing the intentional tort approach to measure damages for interference with contract. As authority for the suggestion, he referred to *Mooney v. Johnson Cattle Co., Inc.,* 291 Or. 709, 634 P.2d 1333 (1981). The issue in that case was whether damages for mental distress were recoverable in an action for interference with contractual relations. The majority held that such damages may be recoverable under certain conditions. In so holding, however, it observed, with respect

As we have seen, the Court of Special Appeals adopted the test followed in the third line of cases set out in Prosser by holding that "the trial court erred in limiting the evidence of damages to the 'benefit of bargain,'" and declaring that Lake Shore "should have been permitted to prove such damages as would reasonably flow from the tortious contractual interference by Rite Aid." 55 Md.App. at 182, 461 A.2d 725.[8]

■ We agree in principle with the views and holding of the Court of Special Appeals. But we deem it advisable to be more specific. Accordingly we expressly adopt as the law of this State the provisions of § 774A of the Restatement, Second, Torts.[9] In the light of those provisions "such dam-

---

to the mental distress provision, that when § 774A was added to the Restatement the record of its adoption "reflects no great conviction that it is a 'restatement' of an established rule." *Id.* at 1335. When the draft came before the Institute in 1977, there was a motion to eliminate damages for emotional distress as being "too easily trumped up. In response to a question as to the 'weight of authorities in the cases,' the Reporter replied that it was 'sort of hard to tell.'" *Id.* n. 6. He was amenable to its elimination. In any event, "[T]he motion to strike damages for emotional distress from § 774A failed by a vote of 64 44." *Id.* We are not persuaded by *Mooney* that *Prosser* and § 774A of the Restatement, Second, Torts, (1979) are wrong.

**8.** The Court of Special Appeals thought that
"the contract method appears to allow inadequate damages. If a subsequent sale showed no loss, or at best a minimum loss, the plaintiff would be left without a remedy at law. The tortfeasor would be able to accomplish his objective and yet remain, for all practical purposes, immune from having to pay damages." 55 Md.App. at 179, 461 A.2d 725.

**9.** For cases in other jurisdictions which have applied the measure of damages spelled out in Restatement, Second, Torts, § 774A (1979) see, for example, *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 898 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *Allied Intern. v. Intern. Longshoremen's,* 640 F.2d 1368, 1384 (1st Cir.1981), *aff'd.* 456 U.S. 212, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982); *Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268, 274 (4th Cir.1980); *Pino v. Protection Maritime Ins. Co., Ltd.,* 490 F.Supp. 277, 280 (D.Mass.1980); *Bean v. Johnson,* 279 Ark. 111, 649 S.W.2d 171, 173 (1983); *Ross v. Holton,* 640 S.W.2d 166, 173 (Mo.Ct. App.1982); *Guard-Life Corp. v. Parker Hardware Mfg.,* 50 N.Y.2d

ages as would reasonably flow from a tortious contractual interference" may include the pecuniary loss of the benefits of the contract, consequential losses for which the tortious act is the legal cause, emotional distress and actual harm to reputation, if they are reasonably to be expected to result from the tortious act, and, in appropriate circumstances, punitive damages. We embrace this measure of damages because it fully recognizes that the tortfeasor who induces the breach must be held to the more extensive tort damages since the tort is necessarily an intentional one, but does not impose liability without some limit. *See* Dobbs, *Law of Remedies,* § 6.4, p. 461.

## IV

Any type of legally protected property interest that is capable of being sold may be the subject of disparagement, but generally injurious falsehood cases have been concerned, as here, with aspersions upon the title to property or its quality. Prosser, § 128, p. 918. Annot., 4 A.L.R. 4th 532 (1981) comments:

"The law does not presume that damages occur as a necessary result of an act of slandering one's title to real or personal property. Thus, it is well established that in a slander of title action recovery may be had only for special, as distinguished from general, damages. Indeed, together with the uttering and publication of the slanderous material, as well as the falsity of such materials and malice, the existence of special damages is an element of a cause of action for slander of title." *Id.,* § 2 a, pp. 536–537 (footnotes omitted).

The Annotation collects and discusses the state and federal cases in which the courts have considered what losses constitute special damages recoverable in a slander of title action.

183, 406 N.E.2d 445, 452, 428 N.Y.S.2d 628 (1980); *Mooney v. Johnson Cattle Co., Inc.,* 634 P.2d at 1335; *Meyer v. 4–D Insulation Co., Inc.,* 60 Or.App. 70, 652 P.2d 852, 856 (1982); *Johnson v. Schmitt,* 309 N.W.2d 838, 841 (S.D.1981); and *Boyles v. Thompson,* 585 S.W.2d 821, 836 (Tex.Civ.App.1979).

Despite the abysmal lack of uniformity in the consideration by the courts in most areas with regard to the right of the injured party to recover for special damages suffered as a result of a slander of title, one principle stands bright and clear.

"It is a well established principle, supported explicitly or implicitly by all of the cases in this annotation, that the injured party can recover only for pecuniary loss resulting from the disparaging words or material, that is, recovery is limited to harm to those interests having pecuniary value." *Id.* at 537 (footnotes omitted).

It is also well established as a corollary to this principle that

"mental distress or anguish is not within the range of special damages proximately resulting from a slander of title action, a principle supported by some, and disputed by none, of the cases...." *Id.* (footnote omitted).

Professor Prosser, in complete accord, put it this way:

"The 'special damage' which the plaintiff must always plead and prove as an essential part of his cause of [slander of title] action means a pecuniary loss. Such personal elements of damage as mental suffering, which frequently are recoverable in defamation, have been very strictly excluded from actions for disparagement and injurious falsehood." Prosser, *The Law of Torts,* § 128, p. 922.

Comment f to § 623A of Restatement, Second, Torts (1977) states that "[c]ompensatory damages in an action for injurious falsehood have consistently been limited to harm to interests of the plaintiff having pecuniary value, and to proved pecuniary loss." Comment j to § 633 declares:

"[E]motional distress and resulting harm may not in an action for injurious falsehood be taken into account as an element of damage that the jury may consider in determining the amount recoverable, even when there is such pecuniary loss as to make the publication of the injurious matter actionable."

Professor Dobbs agreed: "The requirement in disparagement cases that the plaintiff prove special damages is a requirement that he prove actual pecuniary loss." Dobbs, *Law of Remedies,* § 6.7, p. 504. *Accord,* 50 Am.Jur.2d, *Libel and Slander,* § 546 and § 550.

The limitation of "special damages" to pecuniary loss in an injurious falsehood action seems to be the only area with respect to damages that is clearly delineated. There is no persuasive weight of authority expressing a general principle in regard to what losses are within the designation of "pecuniary losses" and thus recoverable.

Although some courts have expressed legal principles as to what constitutes special damages in slander of title cases, most courts that have addressed the matter have generally treated the question of what various losses are recoverable as special damages in a slander of title action as a factual matter to be determined by the allegations or evidence in a particular case. They indicate thereby that such losses would be recoverable if duly established. This latter approach has been applied, for example, to loss of vendibility or value of the disparaged property, to the litigation expenses incurred in removing the effects of the slander, to losses involving interest, either in the sense of losing interest due or being required to pay interest which should not have been due but for the slander, to losses involving the value of a leasehold interest, to harm to credit reputation, to losses by reason of a denial of rents due under a lease or by reason of preventing the entering into of a lease, and to other miscellaneous losses. *See* Annot., 4 A.L.R. 4th 537–539. This *ad hoc* approach is indicated in 50 Am.Jur.2d § 550 which states, "What constitutes special damages, and the amount of the recovery, depend upon the character of the defamation . . . and upon the evidence introduced."

According to the Restatement, Second, Torts, if the publication of an injurious falsehood is a legal cause of pecuniary loss, *see* § 632, such loss is restricted to

"(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and

(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement." § 633(1).

This pecuniary loss may be established by "(a) proof of the conduct of specific persons, or (b) proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify." § 633(2).

"Although exemplary or punitive damages are not recoverable as a matter of right in an action for slander of title, they are recoverable if they are justified by the evidence, and if, according to some authorities, actual damages are shown." 50 Am.Jur.2d, *Libel and Slander,* § 551. Annot., 7 A.L.R. 4th 1219 (1981) is in accord, declaring that "the courts reviewing actions for slander of title have held that punitive or exemplary damages were recoverable . . ." in appropriate circumstances. *Id.* at 1221.

▉ Considering all of this leads us to ennunciate the following as a fair and workable rule for the measurement of damages in a disparagement of real property action. Recovery is limited to special damages as distinguished from general damages. Special damages are those which result in a pecuniary loss directly or immediately from the conduct of third persons. As a general principle, pecuniary loss in this context includes that from the impairment of vendibility or value by the disparagement and the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by the disparagement. Whether other various losses qualify as special damages depends upon the character of the defamation and the evidence adduced in each case. Pecuniary loss may be established by proof of the conduct of specific persons, or proof that the loss has resulted from the conduct

of a number of persons whom it is impossible to identify. Emotional distress and bodily harm resulting from the disparagement are strictly excluded. Exemplary or punitive damages are recoverable in appropriate circumstances.[10]

## V

, [4] We have determined that exemplary or punitive damages may be recovered under "appropriate circumstances" in both an action for interference with a contract and an action for injurious falsehood. Guidelines for the ascertainment of the appropriateness of the circumstances have been established by the opinions of this Court dealing with punitive damages generally.

The first condition for recovery of punitive damages is that there be an award of compensatory damages. *Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 446, 340 A.2d 705 (1975) and cases cited therein. In the tort of interference with a contract an award of such damages in nominal amount is sufficient to support a recovery of punitive damages. *Id.* But when real property is disparaged, the existence of special damages, as we have seen, is an element of the cause of action. Therefore, in such an action, an award of nominal damages will not suffice to permit an assessment of punitive damages. As Professor Dobbs put it, "The plaintiff recovers nothing at all unless he proves special damages." Dobbs, *The Law of Remedies,* § 6.7, p. 504. The summary and comment in Annot., 7 A.L.R. 4th 1219 states:

> "Since it is generally recognized that special or at least actual, compensatory, or pecuniary damages are necessary to support an action for slander of title at all, . . . a fortiori the existence of such damages is necessary to support an award of exemplary or punitive damages. Such is the implication of the great majority of cases

---

**10.** For the function of the court and the jury in an action for injurious falsehood *see* Restatement, Second, Torts, § 652 (1977).

discussed throughout the annotation." At 1222–1223 (footnotes omitted).

██ The second condition necessary to support punitive damages is that the tortious act be committed with actual malice. We recognized this in *Knickerbocker Co. v. Gardiner Co.*, 107 Md. at 569, 69 A. 405, when we said, "[I]f, for example, there was evidence tending to show that the defendant had caused the contract to be broken for the sole purpose, and with the deliberate intention of wrongfully injuring the plaintiff, exemplary damages might be recovered...." Hammond, C.J., put it this way in *Damazo v. Wahby,* 259 Md. 627, 270 A.2d 814 (1970):

> "The Maryland rule is that malice in the sense of deliberate and improper violation of a known right, that is, absence of legal justification, will support an action and permit recovery of compensatory damages for deprivation of known contractual rights but that actual malice must be shown to support punitive damages." *Id.* at 638, 270 A.2d 814.

This observation applies as well to disparagement of real property. Annot., 7 A.L.R. 4th 1219 collects and analyzes the cases, state and federal, determining whether, and in what circumstances, punitive or exemplary damages may be awarded in an action for slander or disparagement of title or ownership of property. *Id.* at 1220. A number of cases in other jurisdictions "have expressly recognized that it is necessary to show actual malice, defined minimally as communicating or acting with a wanton or reckless disregard for the truth, in order to justify an award of punitive or exemplary damages in an action for slander of title." *Id.* at 1224 (footnotes omitted).[11] For a thorough discussion with exhaustive Maryland citations on the matter of malice in

---

11. Annot., 7 A.L.R. 4th 1219, points out that Restatement, Second, Torts contains no "pointed discussion respecting the degree and nature of malice required to support an award of punitive or exemplary damages." *Id.* at 1224. See § 623A, comment f and § 621, comment d of the Restatement.

regard to punitive damages see *H & R Block, Inc. v. Tester-man,* 275 Md. 36, 42–47, 338 A.2d 48 (1975).

## VI

■ The discussion and holdings above leave no doubt as to the resolution of the question presented by the limited review permitted under our order for the issuance of the writ of certiorari. The answer is that the trial court did not "apply the correct measure of damages to Lake Shore's claim of injurious falsehood and tortious interference with a land sale contract." It erred in failing to distinguish between damages which may be recovered in an action for interference with a contract and those which may be recovered in an action of disparagement of real property. Its limitation as to both torts of evidence pertaining to damages measured under the contract method—"benefit of bargain" —was erroneous. As we see it, the court's limitation was with the view that in no event were damages recoverable except those arising from losses calculated under the benefit of bargain test.[12] We have seen that this is not necessarily so.

We agree with the bottom line of the opinion of the Court of Special Appeals. The judgment of the trial court must be reversed and a new trial granted. Therefore, we affirm the judgments of the Court of Special Appeals.

## VII

In affirming the judgments of the Court of Special Appeals we take no stand on the admissibility *vel non* of evidence to prove the damages set out in Lake Shore's proffer. The admissibility of such evidence as may be adduced by Lake Shore to establish damages recoverable

---

12. The trial judge recognized that punitive damages may be recovered. He indicated that there was "sufficient evidence of actual malice to warrant submitting of the issue of punitive damages to the jury in this case," if there was "proof of actual damages sufficient to support a claim for punitive damages . . . ." *See H & R Block, Inc. v. Testerman,* 275 Md. 36, 44, 338 A.2d 48 (1975).

under the tests we have adopted is for determination at the new trial.

As we have noted, note 4 *supra,* the propriety of the affirmance by the Court of Special Appeals of the partial summary judgment in favor of Lake Shore, whereby it was determined that no lease existed between Lake Shore and Rite Aid, is not within the ambit of the review granted by the writ of certiorari. Nor is the sustaining by the trial court of Rite Aid's demurrer to the third and fourth counts of Lake Shore's second amended declaration. *See* note 2, *supra.* On retrial both of these rulings stand as the law of the case insofar as the trial court is concerned. *See Loveday v. State,* 296 Md. 226, 229–234, 462 A.2d 58 (1983).

JUDGMENTS OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY PETITIONERS.