704 A.2d 433

The DRIGGS CORPORATION

v.

MARYLAND AVIATION ADMINISTRATION.

No. 68, Sept. Term, 1997.

Court of Appeals of Maryland.

Jan. 14, 1998.

J. Richard Margulies (Leonard A. Sacks, Sacks & Margulies, all on brief), Rockville, for appellant.

William A. Kahn, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland; Douglas G. Carrey–Beaver, Asst. Atty. Gen., all on brief), Baltimore, for appellee.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

WILNER, Judge.

The underlying dispute that generated this appeal arises from the termination by appellee, Maryland Aviation Administration (MAA), of an $11.5 million contract it had entered into with appellant, The Driggs Corporation (Driggs), to extend and upgrade Runway 10–28 at Baltimore–Washington International Airport. We are not directly concerned here with the merits of that dispute—whether MAA acted properly in terminating the contract with Driggs. After an extensive hearing, the Maryland State Board of Contract Appeals (BCA) held that MAA did not act unlawfully in doing what it did.

The issue presented to us by the parties is whether the Circuit Court for Anne Arundel County erred in dismissing Driggs's petition for judicial review of the BCA decision on the ground that, by declining to produce evidence after BCA had denied its motion for summary disposition, Driggs had acquiesced in the decision. We shall hold that the court did err in that ruling. There is, unfortunately, another issue, not addressed by the parties but apparent from the record, that requires consideration as well and that will ultimately govern

this appeal. The fact is that the petition for judicial review was premature. As we shall explain, there remained at issue the question of damages, which (1) was part of MAA's claim, (2) had been bifurcated by BCA, and (3) had not apparently been resolved by BCA when the petition was filed. Ordinarily, only final administrative decisions resolving the entire claim before the agency are appropriate for judicial review, and the order sought to be reviewed in this case did not qualify either as a final decision or as the kind of special interlocutory order for which immediate judicial review is available.

### FACTUAL BACKGROUND

The contract in question was approved by the Board of Public Works on April 14, 1993. It called for Driggs to complete certain work (Phases 1 and 2) on Runway 10–28 within 200 days after issuance of a Notice to Proceed. The completion date was eventually extended by MAA to December 31, 1993. The contract also incorporated two clauses mandated by a State Procurement Regulation. One, required by COMAR 21.07.02.07, was a Termination for Default clause, authorizing MAA to terminate the contract "[i]f the Contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as shall insure its completion within the time specified in this contract, or any extension thereof...." In the event of such a termination, the clause made Driggs and its surety liable for any damage to the State resulting from Driggs's failure to complete the work within the specified time. The other clause, mandated by COMAR 21.07.02.09, was a Termination for Convenience provision, authorizing the State to terminate the contract "whenever the procurement officer shall determine that such termination is in the best interest of the State." If the State invoked that clause, it would be liable to Driggs for certain costs and expenses enumerated in the clause.

On October 21, 1993, MAA invoked the Termination for Default clause and terminated the contract on the grounds that Driggs had (1) "failed to prosecute the contract work with

such diligence as would have assured completion of Phases 1 and 2 within the time and as required by the terms of the contract" and (2) also failed "in its obligation to submit a schedule by August 13, 1993 showing a realistic plan to complete Phases 1 and 2 by December 31, 1993."

Driggs filed a complaint with BCA, asking that the termination be overturned because of excusable delays, waiver by MAA of its right to terminate for default, and material breaches by MAA. It also asked that the termination for default be converted to a termination for convenience and that it be awarded damages accordingly. MAA answered the complaint, asking that Driggs's claim challenging the termination for default be dismissed. In an accompanying counterclaim, MAA asserted that, because of its default, Driggs was responsible to MAA "for all damages occasioned by [Driggs's] default" and asked that BCA affirm the termination.

On October 18, 1994, after some discussions between BCA and the parties, BCA decided that, as the procurement officer had not yet resolved the question of what damages MAA would be entitled to because of the termination for default, that issue was not properly before BCA but, when resolved by the procurement officer, would be dealt with by BCA in a separate proceeding. The pending proceeding would therefore be limited to "entitlement, i.e., the propriety of the procurement officer's final decision terminating Driggs' contract for default." That was confirmed when the hearings actually commenced and MAA advised that it was not planning to offer any evidence as to damages but intended to proceed only on the issue of liability. That bifurcation decision set the stage for the prematurity problem noted above.

With the concurrence of the parties and in accordance with BCA's past practice and with established Federal procurement law, the termination for default was treated as an MAA claim against Driggs, upon which MAA had the burden of proof.[1] Accordingly, MAA proceeded first with its case, to

---

1. There is no dispute with respect to that point. MAA has conceded in its brief before us that "[b]ecause the termination for default was the

establish sufficient grounds for its decision to terminate the contract. In hearings extending over 40 days, it produced 11 fact witnesses, three expert witnesses, and 281 exhibits. Driggs not only cross-examined the MAA witnesses but, either through them or otherwise, placed into evidence 217 exhibits of its own. In addition to certain procedural defenses, it vigorously contested the accuracy of many of the assertions made by MAA with respect to Driggs's diligence and its ability to complete the work within the allotted time. It pressed the point that, at the time of the termination, it still had 135 days left to complete the work.[2]

---

State's claim, MAA had the burden of proving that Driggs had defaulted, *i.e.*, that MAA reasonably believed that Driggs would not complete by December 31, 1993 and that Driggs had refused to meet that date." It made the same concession in the circuit court and clearly acquiesced before BCA in that procedure. No objection was made when the Chairman of BCA ruled that, because it was dealing with an "affirmative claim" by MAA, the agency would proceed first, to establish, at least *prima facie*, the appropriateness of the termination for default. As we indicated, that approach is in conformance with established Federal procurement law and practice. *See Lisbon Contractors, Inc. v. U.S.*, 828 F.2d 759, 764 (Fed.Cir.1987): "[I]t is long-established government contract law in cases brought to the boards of contract appeals (BCA's) that the government bears the burden of proof on the issue of the correctness of its actions in terminating a contractor for default." That burden is placed on the government regardless of whether the action before the BCA is instigated by the government or the contractor. As the *Lisbon* court observed, imposition of the burden of proof of default in BCA cases "falls naturally on the government inasmuch as the government is only being made to bear the burden of proof on its own 'claim' of default. Only after the default issue is resolved, does the board turn to any 'claim' by the government or the contractor for monetary compensation." *Id. See also SMS Data Products Group, Inc. v. U.S.*, 17 Cl.Ct. 1 (1989); *J. Parr Const. & Design, Inc. v. U.S.*, 24 Cl.Ct. 228 (1991); *Daff v. U.S.*, 31 Fed. Cl. 682 (1994); *Hannon Elec. Co. v. U.S.*, 31 Fed. Cl. 135 (1994); *Appeal of Walsky Construction Co.*, ASBCA No. 41,541, 94–1 BCA ¶ 26,264, 1993 WL 298898 (1993), *modified*, 94–2 BCA ¶ 26,698, 1994 WL 43415 (1994); *Appeal of Custodial Guidance Systems, Inc.*, GSBCA No. 6531, 83–1 BCA ¶ 16,278, 1983 WL 7440 (1983); *Appeal of System Development Corporation*, VABCA No.1976R, 87–3 BCA ¶ 20,167, 1987 WL 46306 (1987); *Appeals of Air–O–Plastik Corp.*, GSBCA No. 4925, 81–2 BCA ¶ 15,338, 1981 WL 7454 (1981).

2. MAA never denied that Driggs had that amount of time left to complete the contract. It pointed out, however, that, when asked to supply schedules showing projected work progress and completion

Near the end of MAA's case, Driggs indicated, as it had at the outset of the hearing, that it would be filing a motion for summary disposition, *i.e,* a motion testing whether MAA had presented a *prima facie* case establishing the validity of the termination. The BCA Chairman explained that, although BCA used the administrative terminology "motion for summary disposition," the motion would be in the nature of a motion for judgment, asserting that Driggs was entitled to prevail as a matter of law on the issues covered by the motion. He advised that

"the Board will review the evidence of the record compiled up to the time that the motion is made in the light most favorable to the party against whom the motion is directed, and will resolve reasonable inferences from conflicts in the oral and written testimony comprising the record compiled to the date of the motion. It will resolve such inferences in the favor of the party against whom the motion is directed, and if, having done so, there is lacking a factual predicate pursuant to which, as a matter of law, the moving party is entitled to prevail, the motion will be denied."

When Driggs suggested that, in a non-jury court proceeding, the court, entertaining a motion for judgment at the end of the plaintiff's case, was not required to view the evidence in a light most favorable to the non-moving party, the Chairman iterated that the proceeding was an administrative one and that BCA would apply the standard of review he had announced. He further advised, however:

"The party who made that motion could then stand up and rest, at which point in time another motion could be presented in which the standard of review, if you will, by the Board of the evidence of record would be somewhat different. There we would be focusing on whether the State had met its burden to demonstrate that the termination for default was appropriate in the context that the hearing and notice was mandated by the Administrative Procedure."

---

dates, Driggs produced schedules indicating that the work would not, in fact, be completed by December 31.

Presumably on that premise, Driggs orally moved for summary disposition at the end of MAA's case. BCA initially took the motion under advisement but, in a 22–page memorandum opinion filed January 2, 1996, it denied the motion. In its memorandum, BCA reiterated that, in considering a motion for summary disposition, the Board determines only whether there are material facts in dispute and what legal principles govern the issues in dispute. It once again made clear that, in ruling on such a motion, it must resolve "all conflicting evidence and all legitimate inferences raised by the evidence . . . in favor of the party . . . against whom the motion is directed" and that "[t]he purpose of summary disposition is not to resolve factual disputes nor to determine credibility, but to decide whether there is a dispute over material facts which must be resolved by the Board as trier of fact." Accordingly, it confirmed that summary disposition was not appropriate "if a genuine issue of material fact is in dispute" or if undisputed facts are susceptible of more than one permissible factual inference.

With that introduction, BCA proceeded to examine the issues raised by Driggs, the positions taken by the parties with respect to those issues, and some of the evidence bearing on the issues. In the course of that examination, BCA identified a number of specific and substantial factual conflicts. Its overall conclusion was that "there are material facts in dispute concerning whether [Driggs] was in breach of the contract concerning timely performance and whether [Driggs] would have cured any such breach of its contract had its contract not been terminated for default." Resolving all reasonable inferences in favor of MAA, BCA concluded that MAA had a reasonable belief that (1) Driggs would not or could not complete Phases 1 and 2 by December 31, 1993, (2) December 31 was the appropriate completion date for Phases 1 and 2, and (3) completion of Phases 1 and 2 by December 31 was critical. Accordingly, BCA determined that "the record at this juncture *may be read* to continue to support *prima facie* the State's belief in the summer of 1993 that the contractor refused or failed to prosecute Phases 1 and 2 with such

diligence as to insure their completion by December 31, 1993, and that such failure was material and, if not deliberate, was not excusable...." (Emphasis added.) After considering and rejecting certain other procedural defenses raised by Driggs, BCA therefore denied the motion.

Three weeks after the filing of the memorandum opinion, Driggs informed BCA that it saw no "economic benefit to continuing the administrative proceeding and deferring our remedy in the courts until next fall," and it therefore decided to rest its case. It asked for an expeditious decision. It is clear, however, that neither the parties nor BCA expected that a final decision would be rendered without further input from the parties and that Driggs was in no way acquiescing in any conclusion that MAA acted properly in terminating the contract for default. On February 2, 1996, BCA set a schedule for the filing of post-hearing briefs, and, indeed, extensive briefs were filed. Driggs filed an initial brief of 74 pages; MAA filed a 114–page brief; Driggs then filed a 24–page reply brief, which was met with a 25–page reply brief from MAA. Each of those briefs addressed the myriad of factual disputes in the record. On June 25, 1996, BCA rendered a 56–page opinion in which it made specific findings with respect to the disputed matters and held that MAA acted reasonably in terminating the contract.

From that decision, Driggs sought judicial review in the Circuit Court for Anne Arundel County. MAA responded with a motion to dismiss Driggs's "appeal," asserting that "Driggs, by its words and conduct, consented to the final decision by [BCA]" and that, "[o]n the authority of *Osztreicher v. Juanteguy*, 338 Md. 528, 659 A.2d 1278 (1995), Driggs' consent bars it from invoking the *appellate jurisdiction* of this Court." [3] (Emphasis added.) MAA's position was that, when

---

**3.** In replacing the former Chapter 1100 Rules with the Title 7, Chapter 200 Rules in July, 1993, we made clear, even through the new nomenclature, that those actions are not "appeals," as they do not seek review of any judicial decision, but rather invoke the statutory original jurisdiction of the circuit courts to exercise a limited review of Executive Branch decisions. *See Gisriel v. Ocean City Elections Board*, 345 Md.

BCA denied the motion for summary disposition, "[t]he burden shifted to Driggs to controvert the State's case" and that, when it rested without going forward with any evidence, it tacitly accepted BCA's ruling and therefore acquiesced in the final decision. The court apparently accepted MAA's interpretation of both *Osztreicher* and the respective burdens of proof, for it granted MAA's motion and dismissed the petition. The written order dismissing the petition was filed on January 13, 1997. On January 23, Driggs filed a motion to alter or amend that order, complaining that the court had misconstrued *Osztreicher*. The motion was denied on February 25, and, on March 7, Driggs noted an appeal to the Court of Special Appeals. Before any significant proceedings in that court, we granted *certiorari* on our own initiative to consider the singular issue raised.

## DISCUSSION

### (A) *Motion To Dismiss*

 It would appear that the Attorney General's Office has been laboring under the misimpression that an action for judicial review of an administrative agency's final order is in the nature of an "appeal," invoking the appellate jurisdiction of the circuit court. Based on that misunderstanding, it has, on behalf of MAA, moved to dismiss this appeal from the judgment of the circuit court on the ground that the notice of appeal was untimely. As noted, the order dismissing Driggs's petition was filed on January 13, 1997. Driggs filed a motion to alter or amend that order on January 23—the tenth day after the order was filed. By virtue of Maryland Rules 2–534 and 8–202(c), the filing of that motion suspended the allowable time for noting an appeal from the January 13 order until 30 days after the date upon which the post-judgment motion was denied. The motion was denied on February 25, and the appeal was noted on March 7, 1997.

---

477, 693 A.2d 757 (1997) and *Colao v. County Council,* 346 Md. 342, 697 A.2d 96 (1997).

MAA's motion to dismiss is based upon the erroneous supposition that, because Driggs's petition to the circuit court invoked the appellate, rather than the original, jurisdiction of that court, Rules 2–534 and 8–202(c) have no application and that, as a result, (1) the post-judgment motion did not suspend the time for noting an appeal and (2) the time for noting an appeal expired 30 days after January 13. In support of its motion, MAA cites *Pollard v. State*, 339 Md. 233, 661 A.2d 734 (1995). Unfortunately, it has misconstrued that case as well. *Pollard* dealt with a true appeal to the circuit court—from a judgment of the District Court—and the issue was whether, in a criminal appeal to be tried *de novo* in the circuit court, the court had authority under Rule 7–112 to reinstitute the appeal after having dismissed it for failure of the defendant to appear for trial. We held that the court did have such authority— that the reference in Rule 7–112 to Rules 2–534 and 2–535 was not intended to limit the court's post-judgment revisory power to civil appeals. *Pollard* in no way supports the notion that Rule 2–534 does not apply in an action for judicial review of an administrative agency order. As we have made clear, a petition for judicial review of an administrative agency order invokes the original, not the appellate, jurisdiction of the circuit court, and, accordingly, Rule 2–534 applies to the action. MAA's motion to dismiss this appeal is denied.

### (B) *Validity of Order Dismissing Petition for Judicial Review*

As we have observed, the sole basis for MAA's motion to dismiss Driggs's petition for judicial review in the circuit court and the sole basis for the court's granting of that motion, was the view that, by resting its case after the denial of its motion for summary disposition, Driggs effectively invited and therefore acquiesced in the decision of BCA and, as a result, is not allowed to challenge that decision on "appeal." For that proposition, MAA cites only *Osztreicher v. Juanteguy, supra*, 338 Md. 528, 659 A.2d 1278. The precise basis of MAA's theory is somewhat unclear; its argument can be cast either as a misconstruction of *Osztreicher* or as a misinterpretation

of the burden it had before BCA. We shall address both possibilities.

## (1) *Osztreicher and Motion for Judgment*

*Osztreicher* arose from a medical malpractice case filed in the circuit court after a waiver of proceedings before the Health Claims Arbitration Office. While the case was still before the Health Claims Arbitration Office, the plaintiff had named three possible expert witnesses, among them a Dr. Stewart Battle, but later indicated that he did not intend to call Dr. Battle to testify. When the case reached the circuit court, despite the absence of any further communication from the plaintiff with respect to his expert witnesses, the defendant deposed Dr. Battle. In the course of the deposition, he inquired as to the amount of income Dr. Battle earned from forensic endeavors and was given an approximate figure. The day before trial was to commence, the defendant served a subpoena on Dr. Battle, directing him to produce at trial certain financial records, including tax records indicating the amount of income received in the prior two years from "medical/legal and/or forensic activities." The court denied the plaintiff's motion to quash the subpoena, offering instead to review *in camera* the documents produced, to determine which of them might be suitable for use in cross-examination.

The plaintiff responded that Dr. Battle would refuse to testify if required to produce those documents and that, without Battle's testimony, he would be effectively precluded from putting on a case. He moved for a mistrial, and, when that motion was denied, he declined to present any evidence, notwithstanding that he did have another expert witness who was prepared to testify. On that state of affairs, the court granted the defendant's motion for judgment, following which the plaintiff noted an appeal.

■ We dismissed the appeal, beginning our discussion by confirming the well-established principle that "[t]he right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken

or by otherwise taking a position which is inconsistent with the right of appeal." *Id.* at 534, 659 A.2d 1278, quoting from *Rocks v. Brosius,* 241 Md. 612, 630, 217 A.2d 531, 541 (1966). We then recounted some of the circumstances that, in earlier cases, we had determined to constitute acts of acquiescence. Citing a number of out-of-State cases, we concluded, at 535, that "[a] party who does not offer evidence *on an issue as to which that party has the burden of proof* acquiesces in the adverse judgment entered *on that issue.*" (Emphasis added.) Examining then the circumstances of the particular case, we observed that the denial of Ozstreicher's motion to quash the subpoena did not leave him without a case to present. Implicit, of course, was the fact that, had he proceeded with the case and lost, he could have challenged on appeal the validity of the court's ruling on the motion to quash. By refusing to present any evidence, however, when it was he, as the plaintiff, who had the burden of both production and persuasion, he effectively "acquiesced in, if not consented to," the entry of the judgment he then sought to challenge. *Id.* at 535, 659 A.2d 1278.

The case now before us is significantly different from the circumstances in *Osztreicher.* MAA contends in its brief that "the *Osztreicher* doctrine of acquiescence ... does not depend upon ... who has the burden of proof." That assertion is palpably wrong; the doctrine of acquiescence very much depends on who has the burden of proof. There is nothing strained, unfair, or illogical in a conclusion that, when a party who has the burden of producing persuasive evidence on an issue deliberately declines to do so, that party necessarily acquiesces in an adverse judgment, for, through that deliberate conduct, the party leaves the court with no other choice than to enter that judgment; the party effectively invites the judgment. That is not the case, however, when it is the adverse party who has the burden of producing the persuasive evidence. Maryland law, and, indeed, civil procedure generally throughout the country, has long recognized the ability of the party not having the burden of proof (B) to test the legal

sufficiency of the evidence produced by the party having that burden (A) through a motion made at the end of A's case.

In Maryland court proceedings, such a motion is now termed a motion for judgment (Md. Rule 2–519); formerly, it was known as a motion to dismiss, if made in a non-jury case, or a motion for directed verdict, if made in a jury case. *See* former Md. Rules 535 and 552. At earlier times, it was often referred to as a demurrer to the evidence. *Washington Rwy. & Elec. Co. v. Anderson*, 168 Md. 224, 227, 177 A. 282 (1935). The purpose of such a motion, whatever its denomination, is "to allow a party to test the legal sufficiency of his opponent's evidence before submitting evidence of his own." *Smith v. State Roads Comm.*, 240 Md. 525, 539, 214 A.2d 792, 799–800 (1965); *J. Whitson Rogers, Inc. v. Board*, 285 Md. 653, 660, 402 A.2d 608, 612 (1979).

The issue traditionally presented by such a motion is a purely legal one—whether, as a matter of law, the evidence produced during A's case, viewed in a light most favorable to A, is legally sufficient to permit a trier of fact to find that the elements required to be proved by A in order to recover have been established by whatever standard of proof is applicable. To frame the legal issue, the court must accept the evidence, and all inferences fairly deducible from that evidence, in a light most favorable to A; it is not permitted to make credibility determinations, to weigh evidence that is in dispute, or to resolve conflicts in the evidence.[4]

---

4. As was pointed out by Driggs to BCA, in adopting Rule 2–519 in 1984, this Court made a significant change in practice when such a motion is made by B at the close of A's case in a non-jury action. In that one situation, the Rule no longer requires the court to view the evidence in a light most favorable to A and to consider only the legal sufficiency of the evidence, so viewed, but allows the court to proceed as the trier of fact to make credibility determinations, to weigh the evidence, and to make ultimate findings of fact. As the BCA chairman responded, BCA, as an administrative agency not directly subject to Rule 2–519, treated the motion for summary disposition—the functional equivalent of a motion for judgment—in the more traditional manner. No one objected to that approach.

It has always been understood and recognized, however, that a party who makes and loses such a motion has an option. The party (B) may proceed to present additional evidence in an effort to controvert, or further controvert, the evidence produced in A's case, in which event B effectively withdraws the motion for judgment and may not complain on appeal about the denial of it (Md. Rule 2–519(c)), or B may rest on the denial of the motion and challenge on appeal the court's determination that the evidence was legally sufficient.[5] It would be illogical, and wholly inconsistent with that option, to conclude that, when B elects to pursue on appeal a challenge to the legal sufficiency of A's evidence, B effectively loses the right to do so on a strained notion of acquiescence. The logical dilemma is apodictic: if B produces evidence following denial of the motion, B effectively withdraws the motion for judgment and thereby loses its right to pursue on appeal the sufficiency argument presented by that motion; if, instead, B elects to stand on its legal position and not withdraw the right to pursue the matter on appeal by producing further evidence, it then, under MAA's theory, loses its right to present the issue on appeal by acquiescing in the ultimate judgment. If the law supposes that, then Mr. Bumble would indeed be correct in his characterization of it as "a ass, a

---

**5.** As Judge Niemeyer and Ms. Schuett point out, there used to persist the notion that if B offered tangible evidence during A's case, B waived the right to move for directed verdict. That notion, they conclude, had no basis, for it would have effectively precluded B from cross-examining A's witnesses. Rule 2–519(a) was intended to eliminate any misconception on the matter by providing expressly that "[a] party does not waive the right to make the motion by introducing evidence during the presentation of an opposing party's case." PAUL V. NIEMEYER AND LINDA M. SCHUETT, MARYLAND RULES COMMENTARY 388 (2d ed.1992). To the extent that B produces evidence in the course of A's case, whether through documents, cross-examination, or otherwise, there may well be a controverting of A's evidence at that stage. For purposes of a motion for judgment made at the end of A's case, however, while all of the evidence of record at that point must be considered, it must be considered in a light most favorable to A, with any contradictions resolved in favor of A. The presentation of additional evidence in B's case, whether by B or A, produces a different record for consideration (1) by the court, on any motion for judgment at the end of the entire case, or (2) by the trier of fact.

idiot." CHARLES DICKENS, OLIVER TWIST, ch. 10. We shall not construe the law in such a manner. Whether under Rule 2–519 or under a comparable administrative practice, a party who does not have the burden of proof in the case may, through a proper motion made at the end of the case of the party who does have that burden, challenge the legal sufficiency of the evidence produced by that party, and, if the motion is denied, the moving party may decline to produce further evidence and, subject to compliance with other applicable procedures, pursue the legal issue on appeal or judicial review. The moving party does not lose that right, merely by declining to produce further evidence, through some notion of acquiescence. *See Lake Shore Inv. v. Rite Aid Corp.*, 55 Md.App. 171, 461 A.2d 725, *aff'd Rite Aid Corp. v. Lake Shore Inv.*, 298 Md. 611, 471 A.2d 735 (1984).[6]

---

**6.** We have applied that principle on a number of occasions in criminal cases. Md. Rule 4–324(c) and Maryland Code, § 593 of Article 27 are direct analogs to Rule 2–519(c); they allow a defendant in a criminal case to move for judgment of acquittal at the end of the State's case and, if the motion is denied, produce evidence on his or her behalf. If the defendant proceeds in that fashion, the motion is deemed to be withdrawn. When a defendant elects not to produce such evidence, he or she may permit the case to be decided by the trier of fact on the State's evidence and argue the legal sufficiency of that evidence on appeal. *See Jackson v. State, sub nom. Cherry v. State,* 305 Md. 631, 644–47, 506 A.2d 228, 235–36 (1986); *Marr v. State,* 227 Md. 510, 177 A.2d 862 (1962); *see also Rowan v. State,* 175 Md. 547, 3 A.2d 753 (1939); *Baines v. State,* 37 Md.App. 505, 378 A.2d 177 (1977); *Pearson v. State,* 28 Md.App. 464, 347 A.2d 239 (1975); *Sizemore v. State,* 5 Md.App. 507, 248 A.2d 417 (1968). We have never applied an acquiescence theory to deny such review.

MAA seeks to distinguish the criminal cases on two bases. First, it notes the provision in § 593 of Article 27 specifically allowing a criminal defendant "to have a review of such ruling on appeal," suggesting implicitly that, absent that provision, a criminal defendant who declines to present evidence also would have no right of appeal. The simple answer to that argument is that the quoted provision in § 593 is not the only basis for allowing appellate review. Section 593 was intended to implement the 1950 amendment to Article 23 of the Maryland Declaration of Rights, permitting the trial and appellate courts, in a jury case, to pass on the legal sufficiency of the evidence. *See Gray v. State,* 254 Md. 385, 255 A.2d 5 (1969), *cert. denied,* 397 U.S. 944, 90 S.Ct. 961, 25 L.Ed.2d 126 (1970). It has no application to non-jury cases, and in jury cases, the law having authorized the trial court

## (2) *Applicable Burdens of Proof*

Notwithstanding the concession in its brief that "[b]ecause the termination for default was the State's claim, MAA had the burden of proving that Driggs had defaulted," MAA, in some of the comments made to BCA, seemed to take the position that its burden in that regard was only to produce a *prima facie* case and that, having done so, the burden of producing controverting evidence then shifted to Driggs. To some extent, its acquiescence argument and its reliance on *Osztreicher* seemed to rest on the notion that, following BCA's denial of Driggs's motion for summary disposition, Driggs did indeed have the burden of producing evidence and was therefore in essentially the same position as Mr. Osztreicher.

Assuming, *arguendo*, that argument survives the concession as articulated in its brief, we find no merit in it. The authorities upon which MAA relies do not support its position with respect to shifting burdens of proof. It seems clear under the analogous Federal practice that the Government bears the burden of establishing "the correctness of its actions in terminating a contractor for default." *Lisbon Contractors, Inc. v. U.S.*, *supra*, 828 F.2d at 764. Once that burden has been met, the contractor then has the burden of establishing any affirmative defenses to the termination, such as that the default was excused or waived or that there was some procedural irregularity in the decision to terminate for default (*Hannon Elec. Co. v. U.S.*, *supra*, 31 Fed. Cl. at 143; *Appeal of California Dredging Co.* ENGBCA No. 5532, 92-1 BCA ¶ 24,475, 1991 WL 201605 (1991)), that the contractor's non-performance was justified (*Airprep Technology, Inc. v. U.S.*, 30 Fed. Cl. 488, 503–04 (1994)), or that, notwithstanding

---

to pass on the legal sufficiency of the evidence, appellate jurisdiction to review such a determination would exist even without the statutory provision. The second ground of distinction, equally unavailing, is the assertion that, because a defendant in a criminal case bears no burden of proof, he or she has no obligation to produce any evidence. We see no practical difference in this regard between a party in a civil action having no burden to produce evidence on a particular issue and a criminal defendant having no such burden.

the right to terminate, the Government abused its discretion in doing so *(Appeal of Walsky Construction Co., supra,* ASBCA No. 41541,, 1993 WL 298898 *on reconsideration,* 94–2 BCA ¶ 26,698, 1994 WL 43415.) Those authorities do not establish the proposition that, merely because a BCA denies a motion for summary disposition upon a finding that the evidence, viewed in a light most favorable to the Government, would support a termination for default, the burden of producing evidence sufficient to negate that *prima facie* finding then shifts to the contractor. That would effectively place the burden of persuasion on the contractor, which the Federal authorities clearly hold is not the law. Indeed, that is not how BCA in this case viewed the matter. Once Driggs rested, BCA looked at all of the evidence again, but as a trier of fact, making credibility and weighing determinations. That is what it was supposed to do.

### (C) *Finality of BCA Order*

■ As we observed, because the MAA procurement officer had not issued a final agency determination of damages when the Driggs complaint was filed, BCA decided to bifurcate the damage issue and deal first, and separately, with whether MAA was justified in terminating for default. From the point of view of administrative convenience, that was not an inappropriate decision in this case. The very entitlement to damages would depend on how the termination for default issue was resolved; if Driggs was successful in converting the termination into a termination for convenience, it, not MAA would likely be entitled to monetary relief. The problem was, however, that monetary relief was part of both parties' respective claims. Neither was interested solely in an academic determination of whether the contract was properly terminated for default. MAA's counterclaim specifically asserted the right to damages, and the right of Driggs to monetary recoupment was explicit in the termination for convenience clause.

In *Holiday Spas v. Montgomery County,* 315 Md. 390, 395, 554 A.2d 1197, 1199 (1989), we reaffirmed our holding in *Md. Comm'n on Human Rel. v. B.G. & E.,* 296 Md. 46, 459 A.2d

205 (1983), that "[a]s a general rule, an action for judicial review of an administrative order will lie only if the administrative order is final." The general condition of finality, at the time, was imposed both by Rule and by the Administrative Procedure Act itself. With an exception codified to take account of the peculiar circumstance in the *Holiday Spas* case and which is not relevant here, that condition remains part of the Act. *See* Maryland Code, State Government Article, § 10–222(a): "a party who is aggrieved by *the final decision* in a contested case is entitled to judicial review of the decision as provided in this section." (Emphasis added.) The exception, now found in § 10–222(b), permits judicial review of an interlocutory order if (1) the party seeking review would qualify for judicial review of a final decision, (2) the interlocutory order determines rights and liabilities and has "immediate legal consequences," and (3) postponement of judicial review "would result in irreparable harm." There is no indication in this case that the BCA decision sought to be reviewed had "immediate legal consequences" or that postponement of judicial review until the damage issue was resolved would result in "irreparable harm."

We pointed out in *Holiday Spas* that, as a general rule, "an administrative order that determines liability but does not decide damages is not final" and that that general rule was "in accord with the rule that a judicial order that does not dispose of the entire case is ordinarily not final." *Id.* at 396–97, 554 A.2d at 1200. The salutary purpose of the finality requirement is to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions. Not only would a contrary rule create the real prospect of unnecessary litigation, as a party choosing to seek review of an unfavorable interlocutory order might well, if the party waited to the end, be satisfied with the final administrative decision, but the wholesale exercise of judicial authority over intermediate and partial decisions could raise serious separation of powers concerns. Whether, for administrative purposes, the damages issue is treated as part of the claim but simply bifurcated and deferred or is treated

as a separate claim, judicial review ordinarily must wait until the entire controversy is decided. That, of course, was not done here. The petition, seeking review of the June 25, 1996 decision was premature and should have been dismissed on that basis.

Accordingly, we shall vacate the circuit court judgment of January 13, 1997 and remand the case to the circuit court. If the damages issues has not yet been resolved by BCA, the court shall dismiss the petition as being premature and remand the matter to BCA for a final decision. If, by now, the damages issues has been resolved by BCA, the court should allow Driggs to file a new petition or amend the existing one, as appropriate, and then proceed in accordance with § 10–222 and the applicable rules to provide judicial review.

JUDGMENT OF CIRCUIT COURT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; APPELLEE TO PAY THE COSTS.